Donald W. BUTTREY, Trustee in Bankruptcy for Dobich Securities Corporation, Plaintiff-Appellee,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant-Appellant.

No. 17136.

United States Court of Appeals
Seventh Circuit.

April 17, 1969.

James A. McDermott, Thomas M. Scanlon, Alan W. Boyd, Indianapolis, Ind., for defendant-appellant, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Frank M. McHale, William F. Welch, John I. Bradshaw, Jr., Alan I. Klineman, James M. Klineman, Indianapolis, Ind., for plaintiff-appellee, McHale, Cook & Welch, Indianapolis, Ind., Klineman, Rose & Wolf, Indianapolis, Ind., of counsel.

Before CASTLE, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal under 28 U.S.C. § 1292(b) involves the question whether defendant was entitled to summary judgment with respect to Counts I, II and III of the complaint. We approve of the district court's action in overruling the defendant's motion for summary judgment.

Plaintiff is the trustee in bankruptcy for Dobich Securities Corporation ("the bankrupt") which had engaged in the sale of securities as a dealer licensed by the State of Indiana. The bankrupt was organized in October 1963 by Michael Dobich, an individual broker-dealer who was then allegedly insolvent. Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. is a well-known, nation-wide securities dealer and maintains an office in Indianapolis.

According to Count I of the complaint, in December 1963, defendant granted

Michael Dobich's request to open a cash account in Indianapolis in the bankrupt's name for the purpose of trading in securities, and Michael Dobich thereafter began to purchase and sell securities in this account. Count I alleges that defendant knew that Michael Dobich was using fraudulently converted property of various customers of the bankrupt in the relevant security transactions with defendant. In its dealings with the bankrupt, defendant assertedly violated Rule 405, the "Know Your Customer Rule" or "The Rule of Due Diligence," of the New York Stock Exchange adopted pursuant to Section 6 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78f), supposedly causing a net loss to the bankrupt of $460,000 plus $55,000 in commissions paid, or a total of $515,000.

Count II was based on the same factual allegations and alleged that the "natural result of such course of business by the defendant operated as a fraud or deceit" upon the bankrupt in violation of Section 17 of the Securities Act of 1933 (15 U.S. C. § 77q) and Rule 10b–5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b–5) promulgated under Section 10 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j).

Count III claimed that defendant knowingly aided, abetted and assisted Michael Dobich in violation of Section 17 of the Securities Act of 1933 and SEC Rule 10b–5. Counts II and III also sought the recovery of $515,000.

As the district court noted, in these three counts plaintiff is asserting creditors' rights to avoid corporate transactions between the bankrupt and defendant. He is seeking to recover net transfers to defendant by the bankrupt in fraud of its customers. Defendant counters that only the customers of the bankrupt can file actions of this type. However, the district court concluded that the bankruptcy trustee was the proper party to prosecute the alleged causes of action, and that each of these counts adequately states a claim. Therefore, summary judgment was denied to defendant.

*Authority of Bankruptcy Trustee to Sue*

The trustee in bankruptcy is attempting to avoid the bankrupt's transfers to defendant on the ground that they were fraudulent or voidable under Federal law as to the bankrupt's creditors. This theory is supported by Section 70e of the Bankruptcy Act, providing in part as follows (11 U.S.C. § 110(e)):

"(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: *Provided, however,* That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws."

The transfers which the trustee is attempting to set aside are the bankrupt's payments to defendant from funds belonging to the bankrupt's customers and which had been unlawfully converted by the bankrupt to purchase securities for its own account. The trustee is not seeking to recover the full amount of the claims of the bankrupt's customers but only the net amount of the transfers by the bankrupt to defendant. By virtue of

Section 70e(1), if under Federal law these transfers were "fraudulent as against or voidable * * * by any creditor" of the bankrupt, Section 70e(2) empowers the trustee to avoid the transfers "irrespective of the existence of such a cause of action in the bankrupt." [1] 3 Remington on Bankruptcy § 1587 (Rev. ed. 1957).

Although Section 70 of the Bankruptcy Act was the principal basis for the district court's decision that the bankruptcy trustee could prosecute this action, its decision is also supported by Section 60e of the Act. Subparagraph (2) of that Section establishes a fund consisting of the proceeds of a bankrupt stockbroker's customers' property unlawfully converted by the stockbroker. In turn, subparagraph (5) of Section 60e provides in part (11 U.S.C. § 96(e) (5)):

"Where such single and separate fund is not sufficient to pay in full the claims of such single and separate class of creditors, a transfer by a stockbroker of any property which, except for such transfer, would have been a part of such fund may be recovered by the trustee for the benefit of such fund, if such transfer is voidable or void under the provisions of this title. For the purpose of such recovery, the property so transferred shall be deemed to have been the property of the stockbroker and, if such transfer was made to a customer for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding. * * * "

It should be noted that this provision specifically empowers the trustee to recover the property transferred by the bankrupt stockbroker "if such transfer is voidable or void under the provisions of this title." As we have already seen, Section 70e declares this transfer voidable if contrary to Federal law, as alleged here.[2]

In opposition to the foregoing interpretation, the defendant relies principally on Barnes v. Schatzkin, 215 App.Div. 10, 212 N.Y.S. 536 (1925), affirmed, 242 N.Y. 552, 152 N.E. 424 (1926), certiorari denied, 273 U.S. 709, 47 S.Ct. 100, 71 L.Ed. 852. There a "bucket shop" brokerage firm converted its customers' funds by purchasing securities for its own account from defendants, members of the New York Stock Exchange, who allegedly had knowledge of the fraudulent conversions. Upon the bankruptcy of the brokerage firm, its customers assigned to the bankruptcy trustee their claims against the defendants as aiders and abetters of the bankrupt. Although holding that the trustee was without legal capacity to maintain the action on the assignments,[3] the court noted that Sec-

---

1. An additional source of authority to avoid the challenged transfers may be found in Section 70c (11 U.S.C. § 110 (c)), which was enacted in 1938 and provides in pertinent part:

"The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

In view of the applicability of Section 70e to the present facts, we do not pause to examine the extent to which the above-quoted "strong-arm clause" overlaps, supplements or supplants Section 70e. See

4A Collier on Bankruptcy ¶ 70.48[2] (14th ed. 1967).

2. Both parties have treated this complaint as having charged the bankrupt with a fraudulent transfer of the customers' funds to defendant. Therefore, we need not consider whether the complaint is also sustainable on the theory that Michael Dobich and defendant defrauded the bankrupt by investing funds entrusted to it and contrary to the authorization of its customers. Any losses thereby incurred by the bankrupt would deplete its estate and might be considered a fraud on its creditors, so that Section 70e would permit the trustee to sue. See Pettit v. American Stock Exchange, 217 F.Supp. 21, 25, 30–31 (S.D.N.Y.1963).

3. It is for this narrow point that Barnes is cited in 2 Collier on Bankruptcy (14th

tion 70 of the Bankruptcy Act does permit a trustee "to recover property * * transferred * * * in fraud of creditors, or the like" (at 212 N.Y.S. 539). In *Barnes*, it appears that the trustee was attempting to recover the full amount of the claims of the customers as their assignee, whereas here the bankruptcy trustee is seeking to recover on the theory that there was a fraudulent transfer made by the bankrupt to the defendant, entitling the trustee to recover the net amount of those transfers.

To support its conclusion in *Barnes*, the court insisted that a debtor-creditor relationship must exist between the transferee and the bankrupt, but it is now settled that such a relationship is not required. Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y. 1963).

In *Barnes*, the court also observed that the bankrupt could not recover because it was responsible for the illegal transaction. Not only was this view rejected in the *Pettit* case, but also in Schneider v. O'Neill, 243 F.2d 914 (8th Cir. 1957), where the court observed (at p. 918):

> "While it is unquestionably true that the trustee stood in the shoes of the bankrupt, it is equally true that he stood in the overshoes of the creditors * * *."

There it was held that under Section 70e, the trustee has rights and powers on behalf of creditors that are unaffected by the fact that he could not have recovered if he stood only in the shoes of the bankrupt. Even the defendant's reply brief concedes that under Section 70e a trustee is vested with the rights of creditors and is not limited to the rights of the bankrupt. See Globe Bank & Trust Co. v. Martin, 236 U.S. 288, 297, 35 S.Ct. 377, 59 L.Ed. 583; 4A Collier on Bankruptcy ¶ 70.71 at p. 786 (14th ed. 1967); 3

Remington on Bankruptcy § 1587 note 13.1 (1968 Supp.).

█ In our view, the *Barnes* case did not face and reject the transfer theory urged here. It was decided before the enactment of Sections 70e and 60e on which this trustee relies. And any lingering doubts about the scope of the trustee's authority under Section 70e have been eliminated by the recasting of that provision in 1938. 4A Collier on Bankruptcy ¶ 70.69[2] (14th ed. 1967). Furthermore, being a decision of a state court, the case is not binding upon us in interpreting this aspect of the Bankruptcy Act. *Barnes* does not bar the trustee from maintaining this action.

Defendant also relies upon Nicklaus v. Bank of Russellville, 336 F.2d 144 (8th Cir. 1964), for the proposition that the trustee is without authority to assert a claim for possession of property fraudulently converted by the bankrupt and subsequently transferred. There, however, the dispute was between the trustee and the rightful owner, and it was undisputed that the bankrupt had obtained the property by means of a fraud upon the defendant bank. A state court had already obtained *in rem* jurisdiction of the property prior to the institution of bankruptcy, and the Court of Appeals held that the state court's jurisdiction was not abated by the bankruptcy. Therefore, it affirmed the district court's ruling that the bankruptcy trustee must present his claims to the property in the state proceedings. In the course of its opinion, the court stated (at p. 147):

> "In the case at bar appellant, as Trustee in Bankruptcy, does not state even a colorable claim as to his title or right to possession of the property here considered. It is apparent that the fraud, which he admits existed, was not perpetrated against his bank-

ed. 1968), pp. 391 and 1746; 4A Id. p. 149. (14th ed. 1967). In *Barnes*, Judge Finch wrote a persuasive dissent based on an unreported opinion of Judge Learned Hand. Until the present case, the *Barnes* case has not been cited judicially since the year after its affirmance and

may no longer represent the view of the New York courts. See Tchlenoff v. Jacobs, 44 N.Y.S.2d 38, 39 (Sup.Ct.1943), affirmed, 267 App.Div. 908, 46 N.Y.S.2d 875, affirmed, 293 N.Y. 904, 60 N.E.2d 32 (1944).

rupt; or by a person who received possession of property rightfully belonging to his bankrupt. Property obtained by fraud of the bankrupt, or by other tort, is not properly a part of the assets of a bankrupt's estate."

Here, conversely, the trustee is asserting the right of the defrauded customers of the bankrupt to recover property obtained by the defendant's fraud upon the bankrupt or its customers. Thus the position of the defendant bank in *Nicklaus* is more like that of the customers in the present case than like that of the defendant Merrill Lynch, but the difference is that the bank sued in its own right prior to the filing of the petition for bankruptcy rather than filing any claims against the bankrupt or electing to treat the bankrupt as its debtor. Here the customers of the bankrupt have filed their claims with the trustee and have made that election. Accordingly, *Nicklaus* does not support the defendant's argument that the bankruptcy trustee has no authority to bring this action.

Defendant attempts to distinguish Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963), cited in the opinion below. Count IV of the complaint in that case alleged that certain Swiss banks had aided and abetted in certain fraudulent transfers of shares of the bankrupt corporation. The bankruptcy trustee sought to recover the proceeds of the fraud by means of a suit to avoid the transfers under Section 70e. It has already been noted that the *Pettit* complaint supported a cause of action for fraud against the bankrupt, to which the trustee succeeded.[4] However, the court also held that "the siphoning off of a corporation's assets by insiders constitutes a transaction in fraud of creditors of the corporation" (at p. 31). For this reason, the *Pettit* case lends support to either theory on which the present complaint is sustainable.

In an attempt to show that only the creditors should be permitted to sue here, defendant cites Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673 (N.D.Ind.1966), appeal docketed No. 17167 (7th Cir. September 9, 1968). That was a class action on behalf of the customers of Dobich Securities Corporation against one of the insurance companies in whose stock Dobich Securities specialized. The complaint alleged that the defendant permitted Dobich Securities to create an artificial market for the defendant's stock by soliciting orders with the intent of converting the purchase money to its own use and then covering their short sales of defendant's stock in order to avoid detection redounding to the benefit of defendant by bettering its position in certain merger negotiations. That case is distinguishable for several reasons. No transfer was alleged from the bankrupt to the defendant, and there was no claim that the action could or should have been brought by the bankruptcy trustee. It appears that the complaint in the *Brennan* case contemplated crediting any dividend received by the customers in the bankruptcy against the recovery from the defendant. Accordingly, the remedy approved by the district court in *Brennan* complements rather than conflicts with the trustee's power to avoid fraudulent transfers, and we need not decide when a creditor's cause of action may be preempted by the supervening bankruptcy of his debtor. See 2 Collier on Bankruptcy ¶ 47.05[1] at p. 1745 (14th ed. 1968); 4A Id. ¶ 70.-92[2] (14th ed. 1967). Permitting the bankruptcy trustee to maintain this action will accord with the purposes of the Bankruptcy Act and avoid multiple individual or complex class actions that might result in inequitable distributions of the assets of the bankrupt estate.[5] Of course, our decision that the trustee may maintain this action in no way prejudges the merits of his claim.

4. See note 2, *supra.*

5. See Pettit v. American Stock Exchange, 217 F.Supp. 21, 27, 28 (S.D.N.Y.1963).

*Violation of Rule 405 of New York Stock Exchange May be Actionable.*

Pursuant to Sections 6 and 19 of the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78f and 78s), the New York Stock Exchange adopted Rule 405 providing:

"Every member organization is required through a general partner or an officer who is a holder of voting stock to

(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

(2) Supervise diligently all accounts handled by registered representatives of the organization.

(3) Specifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with a customer, provided, however, that in the case of branch offices, the opening of an account for a customer may be approved by the manager of such branch office but the action of such branch office manager shall within a reasonable time be approved by a general partner or an officer who is a holder of voting stock in the organization. The member, general partner or officer approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval in writing on a document which is a part of the permanent records of his office or organization."

The first count of this complaint asserts that the defendant violated this Rule by various "acts and omissions" resulting in $515,000 damages to plaintiff. For purposes of defendant's motion for summary judgment, we must take as true those acts and omissions described in the complaint. The pertinent allegations are that Michael Dobich was financially unstable and was a big speculator in securities and commodities. In 1962, he issued three large checks to defendant to pay for securities, and the checks were returned for insufficient funds. Defendant suspended him from trading in commodities because of his erratic trading practices. Nevertheless, in December 1963, defendant granted Michael Dobich's request to open a cash account in the name of the bankrupt, of which he was the sole shareholder and principal officer. Defendant authorized the opening of that account without receiving any financial statements, bank references, or credit reports as to the bankrupt. Moreover, defendant did not determine whether the bankrupt filed the requisite financial condition report with the Securities and Exchange Commission, nor did defendant ascertain whether the securities transactions would be for the bankrupt as principal or as agent. Defendant is also alleged to have known after January 20, 1964, that the money used by Michael Dobich in the bankrupt's securities transactions belonged to its customers and was fraudulently converted. In February 1964, defendant changed the bankrupt's cash account to a margin account without investigating its financial ability. Thereafter, defendant permitted Michael Dobich to speculate in large stock transactions for the bankrupt, including "block trading," "day trades," and "short sales." From January through May 1964, defendant purportedly failed to supervise the bankrupt's account properly. The various losses sustained by the bankrupt in trading with defendant resulted in its insolvency.

From the foregoing allegations, the district court concluded that defendant was charged with "an almost callous disregard of Rule 405" and its purpose to protect the public. After noting that Rule 405 also served a non-actionable "housekeeping" function for the New York Stock Exchange, the court decided that a violation of the public protection function of Rule 405 would be actionable.

In J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, the Supreme Court held that private suits for damages were impliedly authorized by the Securities Exchange Act of 1934, stating (at p. 432, 84 S.Ct. at p. 1560):

"Private enforcement of the proxy rules [of the Securities and Exchange Commission] provides a necessary supplement to Commission action. As in antitrust treble-damages litigation, the possibility of civil damages * * serves as a most effective weapon in the enforcement of the proxy requirements."

This holding was recently reaffirmed in Allen v. State Board of Elections, 393 U. S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1.

■ Using the *Borak* case as a springboard, in Colonial Realty Corporation v. Bache & Co., 358 F.2d 178 (2d Cir. 1966), certiorari denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56, Judge Friendly noted that Stock Exchange rules can play an integral part in SEC regulation. The Court summed up this principle as follows (at p. 182):

"What emerges is that whether the courts are to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two parties; rather, the court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation. The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law."

■ The jurisdictional provision of the Securities and Exchange Act of 1934 is contained in Section 27 and provides in part as follows (15 U.S.C. § 78aa):

"The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

There is nothing inconsistent with this Section in holding that violations of Rule 405 may be actionable as a "duty created by this chapter" inasmuch as Rule 405 was promulgated in accordance with Sections 6 and 19 of the Act, even if Rule 405 is not in itself to be considered a rule "thereunder." See Lowenfels, "Implied Liabilities Based Upon Stock Exchange Rules," 66 Colum.L.Rev. 12, 18–19 (1966). The touchstone for determining whether or not the violation of a particular rule is actionable should properly depend upon its design "for the direct protection of investors." Id. at p. 29. Here one of the functions of Rule 405 is to protect the public, so that permitting a private action for its violation is entirely consistent with the purposes of the statute.

We do not decide that an alleged violation of Rule 405 is *per se* actionable. However, Count I pertains to the defendant's acceptance of investments without regard for the bankrupt broker's defalcations of investors' funds. Such a breach of fair practice undermines the protection of investors and surely "play[s] an integral part in SEC regulation" of Exchanges and their members. Colonial Realty Corporation v. Bache & Co., *supra*, at p. 182. As the Supreme Court stated in Silver v. New York Stock Exchange, 373 U.S. 341, 355, 83 S.Ct. 1246, 1255, 10 L.Ed.2d 389:

"It is no accident that the Exchange's Constitution and rules are permeated with instances of regulation of members' relationships with nonmembers including nonmember brokerdealers. A member's purchase of unlisted securities for itself or on behalf of its customer from a boiler-shop operation creates an obvious danger of loss to the principal in the transaction, and sale of securities to a nonmember

insufficiently capitalized to protect customers' rights creates similar risks. In addition to the potential financial injury to the investing public and Exchange members that is inherent in these transactions as well as in dealings with nonmembers who are unreliable for any other reason, all such intercourse carries with it the gravest danger of engendering in the public a loss of confidence in the Exchange and its members, a kind of damage which can significantly impair fulfillment of the Exchange's function in our economy. Rules which regulate Exchange members' doing of business with nonmembers in the over-the-counter market are therefore very much pertinent to the aims of self-regulation under the 1934 Act. Transactions with nonmembers under the circumstances mentioned can only be described as 'inconsistent with just and equitable principles of trade,' and rules regulating such dealing are indeed 'just and adequate to insure fair dealing and to protect investors.' "

■ Although mere errors of judgment by defendant might not support a federal cause of action, the facts alleged here are tantamount to fraud on the bankrupt's customers, thus giving rise to a private civil damage action. See Hecht v. Harris Upham & Co., 283 F.Supp. 417, 430, 431 (N.D.Cal.1968).

In Butterman v. Walston & Co., 387 F.2d 822 (7th Cir. 1967), after trial on the merits, judgment for defendant stockbroker was rendered on counts alleging violations of Stock Exchange rules, but neither the trial court nor this Court intimated that such counts failed to state a federal cause of action. We held that the New York Stock Exchange had no liability "because of violation of its rules where it had no knowledge, or reasonable way of gaining knowledge, of alleged violations, and no duty to enforce its rules against violators until it had or should have the knowledge of violation or suspected violation" (at p. 825). In contrast, various supposed violations of Rule 405 are spelled out in this com-plaint, with knowledge ascribed to defendant. Until this case is actually tried, it will be impossible to ascertain whether defendant has violated Rule 405, and if so, whether the violations justify the imposition of liability.

■ Defendant's final argument is that its alleged violation of Rule 405 did not proximately cause the bankrupt's losses. It is urged that investment decisions were made solely by the bankrupt and that any loss in value of securities purchased by it was due to declines in the market generally. But the result of defendant's allegedly "callous disregard" for the "Know Your Customer" rule was to permit the financially irresponsible president of the bankrupt to use defendant's facilities for the purpose of speculating with funds converted from the bankrupt's customers. If proved, we can fairly say that "the conduct of the defendants in permitting the use of the account and in failing to properly supervise it paved the way for the losses suffered by these plaintiffs." Hawkins v. Merrill Lynch, Pierce, Fenner & Beane, 85 F. Supp. 104, 122 (W.D.Ark.1949). To allow brokers to escape liability under such circumstances by blaming the known defalcator's losses on a market drop would offend public policy and the ameliorative purposes of the securities law and the rules and regulations. We are unable to sustain the proximate cause defense as to any of the counts involved in this appeal.

*Violations of Section 17 of the Securities Act and SEC Rule 10b–5*

Counts II and III are predicated on defendant's violations of Section 17 of the Securities Act of 1933 and Rule 10b–5 of the Securities and Exchange Commission. Section 17 makes it unlawful for a seller of securities "to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser" (15 U.S.C. § 77q). Rule 10b–5 proscribes the same activities "in connection with the purchase or sale of any security" (17 C.F.R. § 240.10b–5). Count

II charges defendant as a principal and Count III as an aider and abettor.

■ Defendant asserts that the only sales relevant to any violation of the Securities Act and Rule 10b–5 are those between the bankrupt and defendant. From this, defendant reasons that since there are no allegations that Merrill Lynch defrauded the bankrupt in connection with these sales,[6] there can be no predicate for violation of the Securities Act. However, it is well settled that parties may be liable for violations of the Act and Rule 10b–5 as long as they engage in fraudulent activity "in connection with" the sale or purchase of securities or in a fraudulent "course of business." Here it is alleged that defendant knew or should have known of the bankrupt's scheme to convert securities investment funds and nevertheless enabled the bankrupt to engage in large-scale speculations with its customers' funds through defendant's office. Without entering the debate as to the precise status of defendant as a "buyer" or a "seller," we are persuaded that Count II sufficiently alleges that defendant benefited by a course of business which operated as a fraud upon the bankrupt's customers to entitle those customers, through the trustee in bankruptcy, to recover the net transfers of the funds so converted. Cf. Cooper v. North Jersey Co., 226 F.Supp. 972, 978 (S.D.N.J.1964); Pettit v. American Stock Exchange, 217 F.Supp. 21, 28 (S.D.N.Y.1963).

■ Defendant does not appear to contest that the bankrupt's activities in converting its customers' funds to its own use constituted violations of the securities laws. See SEC v. Kelly, CCH Fed. Sec.L.Rep. (1948–1952 Decisions) ¶ 90,-497 (N.D.Ill.1951). Defendant argues that its alleged participation in this fraud or deceit could not give rise to liability for aiding and abetting because no corporate cause of action arises in favor of the trustee to protect the defrauded customers. For the reasons discussed above in connection with the trustee's au-

thority to sue, we reject this argument and hold that Count III states a cause of action for aiding and abetting in violation of the Securities Act and Rule 10b–5 and presenting issues of fact suitable for trial on the merits. See Brennan v. Midwestern Life Insurance Co., 259 F.Supp. 673, 682 (N.D.Ind.1966).

The judgment of the district court is affirmed.