**SOUTH SIDE BANK & TRUST COMPANY, Richard P. Larsen, and Harold J. Green, Defendants-Third Party Plaintiffs-Appellants,**

v.

**WALSTON & CO., Inc., Third-Party Defendant-Appellee.**

**No. 17756.**

United States Court of Appeals, Seventh Circuit.

April 8, 1970.

13. Lockhart v. Hoenstine, 411 F.2d 455–458 (3 Cir. 1969); Janek v. Celebrezze, 336 F.2d 828, 834 (3 Cir. 1964).

Norman H. Nachman, Allan G. Sweig, Chicago, Ill., Nachman, Munitz & Sweig, Chicago, Ill., of counsel, for appellants.

Edwin H. Conger, Chicago, Ill., Tenney, Bentley, Howell, Askow & Lewis, Chicago, Ill., of counsel, for appellee.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and MORGAN, District Judge.[1]

CUMMINGS, Circuit Judge.

This case presents the question whether the South Side Bank & Trust Company and two individuals, Richard P. Larsen and Harold J. Green, are entitled to indemnity from Walston & Co., Inc., a brokerage firm.

The current controversy grew out of an action instituted by Frederick D. Wiss against the Bank, its president, Mr. Larsen, and its majority stockholder, Mr. Green, alleging that they had converted American Ship Building Company stock belonging to Wiss. The defendants in the principal action then filed a third-party complaint impleading Walston & Co., Inc., charging that firm with liability for concealing Wiss' proprietary interest in the stock. Pursuant to a settlement of the principal action, a $25,000 judgment was entered against the Bank and the two codefendants. The district court subsequently denied indemnity against Walston, and the third-party plaintiffs have appealed from that judgment.

The essential facts, as found by the district court, were that in April 1960, Wiss pledged 1,500 shares of Western Natural Gas common stock, with stock powers executed in blank, to secure a loan from M. Eli Livingstone. Livingstone then caused the stock certificates and stock powers to be placed in a safety deposit box at the Bank. Access to the box was confined to Larsen and Green.

In April 1961, Livingstone opened an account with Walston in Wiss' name. Through that account, Livingstone ordered 1,000 shares of American Ship stock and arranged for the sale of Wiss' 1,500 shares of Western Natural Gas. Wiss, who had not been consulted about these transactions, learned of them when he received the confirmation notices from Walston. Wiss objected strenuously but ratified the transactions after discussing the matter with Livingstone and Irwin Mitchell, a Walston branch

1. Judge Morgan is sitting by designation from the United States District Court for the Southern District of Illinois.

manager. Nevertheless, in order to insure that the certificates would be held exclusively in his account, Wiss instructed Walston to issue the American Ship shares in his name.

On May 8, 1961, Walston delivered the American Ship shares to the Bank and in turn received Wiss' Western Natural Gas stock. Walston gave the Bank its check for $24,620.75 to cover the Western Natural Gas stock which it received from the Bank. Likewise, the Bank transferred to Walston a $22,290 cashier's check, showing Livingstone as the remitter, to cover the 1,000 shares of American Ship.

When Walston delivered the American Ship shares to the Bank they were in negotiable form rather than in the name of Frederick Wiss, as instructed.[2] The Bank, however, received notice that the stock transactions involved shares which might belong to Wiss rather than Livingstone. Although payable to the Bank, Walston's check for the Western Natural Gas stock stated that it was "for acct: Frederick D. Weiss (sic)." Likewise, the Walston receipt covering the American Ship stock and signed by the Bank's vice president, Richard Aylward, was addressed "South Side Bk. &

Tr. Co. for Acct: FREDERICK D. WESS (sic)." Finally, the Walston receipts obtained by the Bank for the Western Natural Gas stock and for its cashier's check for the American Ship stock showed they were received from South Side Bank & Trust Co. for the account of Frederick Weiss.[3]

Because Wiss' name was on the Walston check and three receipts, the district court concluded that the Bank and its officials "had notice that Wiss might have an interest in the [1,000 American Ship] shares." The court ruled that by allowing Livingstone to sell or pledge the stock as his own, the Bank negligently converted this property, leading to the $25,000 settlement with Wiss.[4] The court finally concluded that the Bank and Walston were equally at fault, and therefore Illinois law barred the Bank and its officials from recovering in their indemnity action against Walston.

■ Appellants have based their claim to indemnity fundamentally on three theories.[5] They argue that Walston violated Rules 405 and 406 of the New York Stock Exchange relating to customers and their accounts.[6] In addi-

---

2. The record contains no explanation for Walston's failure to follow Wiss' instructions. For the purpose of this opinion we cannot rely upon the representation, made by Walston's counsel at oral argument, that the shares were issued in street name because Wiss lacked funds to pay for them, and that delivery could not have been postponed due to a margin rule.

3. The discrepancy between "Wiss" and "Wess" and "Weiss," as they appeared on the pertinent documents, is unimportant.

4. We need not deal with a prior transaction involving Wiss' 2,000 shares of American Ship, since that transaction was not considered by the trial court as the subject of the settlement between Wiss and the Bank, Green, and Larsen which gave rise to the current controversy.

5. On appeal the appellants have raised the claim that Walston's failure to advise them of Wiss' interest in the American

Ship stock constituted common law fraud and deceit. To the exent that it has been properly raised in the pleadings, it is susceptible to the same treatment accorded the other claims.

6. Rule 405 is reproduced at 410 F.2d 141. Rule 406 provides that a member firm may not ordinarily carry an account except in its customer's name. The allegations of these rule violations were contained in Count II of the amended third-party complaint which was dismissed in a minute order of June 12, 1968, for failure to state a claim. No entry of final judgment on that claim was made at that time, and the trial judge made no determination that there was no just reason for delay of appeal as required by Rule 54(b) of the Federal Rules of Civil Procedure. The lack of the necessary certification thus precluded any appeal from that order prior to the conclusion of the entire controversy and the entry of final judgment on May 7, 1969. Winsor v. Daumit, 179 F.2d 475 (7th Cir. 1950);

tion, they charge that Walston breached fiduciary duties of disclosure imposed upon it by common law (Count I) and by Section 10(b) of the 1934 Securities Exchange Act and SEC Rule 10b–5 (Count III). In each instance the gravamen of the contention is that Walston failed to disclose the true ownership interest of Wiss in the American Ship stock and therefore led the Bank and its officials into continued reliance upon Livingstone's representations.

 Even assuming the existence of a special relationship between Walston and the Bank, we still must conclude that the third-party plaintiffs are not entitled to indemnification on the grounds of breach of a duty to disclose, for the existence of Wiss' interest in the 1,000 American Ship shares being transferred was adequately disclosed. Although the stock was issued in street name rather than to Wiss as he had requested, Walston clearly put the Bank on notice that the property was Wiss' and not Livingstone's. The check received by the Bank for the Western Natural Gas stock stated that it was for Wiss' account. The Bank acted contrary to those instructions when it negligently deposited the funds to Livingstone's account. Likewise, the receipt accompanying the shares of stock in American Ship signed by the Bank also indicated that they were for the account of Wiss. Again the Bank's action in treating the shares as exclusively the property of Livingstone was contrary to the explicit indications from Walston. Under these circumstances the Bank cannot support its claim that Walston failed to supply adequate disclosure of Wiss' interest.

Nor may the Bank excuse its disregard of the notice actually given it on the ground that Walston might have made even more elaborate disclosure. Having disclosed through the Walston check and three Walston receipts that the American Ship and Western Natural Gas stock involved was for Wiss' account, Walson need not bear the risk that its instructions would go unheeded by the Bank. Walston's duty to disclose should not render it the guarantor of the Bank's transactions with Livingstone.[7]

Nor does Walston's possible liability to Wiss otherwise entitle these third-party plaintiffs to indemnification. Their negligence was not passive or merely technical in light of their notice of Wiss' interest in the property which they converted to Livingstone's use. 21 Illinois Law and Practice, Indemnity, §§ 10, 12, pp. 317–318, 321–322 (1956). Each party was guilty of equal and active negligence. Drell v. American National Bank & Trust Co., 57 Ill.App.2d 129, 146, 207 N.E.2d 101 (1965). The fact that either party's liability may result from an act of omission rather than commission is not sufficient to change this character. Chicago, Burlington & Quincy R.R. v. Admiral-Merchants Motor Freight, Inc., 397 F.2d 472, 474 (7th Cir. 1968); Wallner v. Kitchens of Sara Lee, Inc., 419 F.2d 1028, 1034 (7th Cir. 1970). Walston's conduct was neither wanton nor fraudulent. Cf. Reynolds v. Illinois Bell Telephone Co., 51 Ill.App.2d 334, 201 N.E.2d 322 (1964). Neither the relations of these parties, the consequential duties owed, nor the quality of conduct giving rise to liability warrant

6 Moore's Federal Practice, ¶ 54.28 [2], pp. 216–220 (1966). The lack of any express reference to this claim in the final order does not prevent proper consideration of the claim of Count II at this time. Morgan v. Koch, 419 F.2d 993, 998, n. 1 (7th Cir. 1970).

7. In light of our conclusion that Walston adequately disclosed Wiss' interest in the 1,000-share American Ship transaction, we need not determine whether, in this case,

the third-party plaintiffs occupied the position of a "purchaser" so as to permit their assertion of a violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b–5. Cf. Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir.1969), certiorari denied, 396 U.S. 838, 90 S.Ct. 98; Carroll v. First National Bank of Lincolnwood, 413 F.2d 353 (7th Cir. 1969), certiorari denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494.

shifting the burden of liability from third-party plaintiffs. See Prosser, Law of Torts, p. 281 (3d ed. 1964).

The decision is affirmed.