James **SALTZMAN et al., Plaintiffs,**

v.

**Barry K. ZERN et al., Defendants.**

**PROVIDENT NATIONAL BANK, Garnishee,**

v.

**William Y. SALTZMAN and Terri Saltzman, Third-Party Defendants.**

Civ. A. No. 74–256.

United States District Court, E. D. Pennsylvania.

Jan. 20, 1976.

Gary Leadbetter, David H. Pittinsky, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for plaintiff.

Michael Lehr, Tyson W. Coughlin, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Provident.

Edward C. Mengel, Jr., White & Williams, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

■ The plaintiffs in this case allege a cause of action against defendants based upon Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. The liability of defendant Provident National Bank ("Provident") is predicated upon its alleged complicity in the role of an aider and abettor. This matter comes before the Court on motion of defendant Provident for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In ruling on this motion for summary judgment we have considered the pleadings, depositions, exhibits and arguments presented at oral argument. In a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. Kress & Co.*, 398 U.S. 144, 149, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As stated in *Moore's, Federal Practice,* ¶ 56.-15[3] at 2335–36:

> The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law.
>
> The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. (Footnotes omitted).

Although there are numerous issues of material fact that remain for trial as between plaintiffs and the defendants other than Provident, for the reasons expressed hereinafter, this Court has determined that there are no genuine factual issues relating to Provident's involvement in this alleged securities fraud. Examining the record before us, we conclude that Provident is entitled to summary judgment on Count I of the Second Amended Complaint.[1] Although the Court could retain jurisdiction as to Count V as pendent matter, we decline to do so; we therefore will dismiss the pendent law state claims in Count V. In summarizing the facts, we will accept the plaintiffs' version as true.

*Facts Alleged by Plaintiffs.*

In February 1972, defendant Barry K. Zern ("Zern") and plaintiff James S. Saltzman ("Saltzman") formed the brokerage firm of Zern, Saltzman & Co., Inc. In establishing the firm, Zern received two-thirds of the issued and outstanding stock and Saltzman received one-third. In addition, contributions of subordinated capital were made by several contributors.

In order to insure that neither Zern nor Saltzman could unilaterally take any major action on behalf of their brokerage firm, they agreed that their joint authorization would be required for any disbursement of Zern, Saltzman & Co., Inc., funds in the amount of $5,000 or more. Furthermore, both Zern and Saltzman visited Provident to open a regular checking account for Zern, Saltzman & Co., Inc. and explained to Provident their agreement requiring joint authorization. Both Saltzman and Zern signed a Provident signature card expressly providing that both signatures were needed for checks exceeding $5,000.[2] At the time that Zern and

---

1. On July 3, 1974, plaintiffs filed a Second Amended Complaint which added Provident as a defendant.

2. The signature card reads as follows:

 "Two to sign over $5,000.00 Anyone under $5,000

 AUTHORIZED SIGNATURES
 James S. Saltzman Exec. V.P. Secy
 Barry K. Zern Pres.-Treas."

Saltzman signed the signature card, Provident completed its standard four-part snap-out form which contained provisions to the same effect.[3] In addition, both Zern and Saltzman completed the printed form furnished by Provident and returned a Certified Copy of Corporate Resolutions. This corporate document, which established the checking account contract between Zern, Saltzman & Co., Inc. and Provident, contained the identical provisions regarding the necessity for both signatures for checks which exceeded $5,000.[4]

Thereafter, commencing in December 1972, Zern, in the name of Aqua Gardens, Inc. ("Aqua Gardens"), allegedly purchased three pet stores for a total consideration of approximately $66,000. Zern, who was the sole shareholder and director of Aqua Gardens at the time of these purchases, allegedly made a total capital investment in Aqua Gardens of $10,000 and received 1,000 shares of Aqua Gardens common stock. Thus, plaintiffs claim that Zern purchased his Aqua Gardens stock for $10 per share.

In May, 1973, Zern and Saltzman agreed to wind down the brokerage business of Zern, Saltzman & Co., Inc., but allegedly disagreed over Zern's desire to invest the funds of Zern, Saltzman & Co., Inc. in Aqua Gardens. Following a number of meetings, on June 22 and 27, Zern alone wrote two checks in the amounts of $74,172 and $40,000 on the Zern, Saltzman & Co., Inc. regular checking account made payable to Aqua Gardens. Even though Saltzman's signature was absent from the checks, whose amounts clearly exceeded $5,000, they were both honored by Provident.

Plaintiffs claim that after Zern transferred a total of $172,000 in Zern, Saltzman & Co., Inc. funds to Aqua Gardens (which sum includes the amounts of the two checks in question), he then transferred 5,568 shares of Aqua Gardens stock to Zern, Saltzman & Co., Inc., thereby allegedly causing Zern, Saltzman & Co., Inc. to pay more than $30 per share when he had paid only $10 a share.

The gravamen of plaintiffs' complaint against Provident is that Provident's action in cashing the two checks, each containing only one of the two required signatures, constituted a "reckless disregard for its duties and liabilities" sufficient to hold Provident liable as an "aider and abettor" of the alleged stock fraud perpetrated under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b) ) and Rule 10b–5 promulgated thereunder. However, in its motion for summary judgment, Provident argues that its "slip up" was not the kind of error that would create liability under 10(b) and 10b–5. Provident contends that in order to establish its complicity, plaintiffs must prove that Provident possessed knowledge of the fraudulent scheme. Since there are no allegations or evidence that Provident knew of Zern's planned disposition of the checks' proceeds, Provident urges that its motion

3. The snap-out form provides:
 "AUTHORIZED SIGNATURES
 Barry Zern-Pres.
 James Saltzman-Exec. V.P.
 ONE TO SIGN UP TO $4,999.00 $5,000 and over both to sign."

4. The Copy of Corporate Resolutions states:
 "For all transactions below $5,000 either Barry K. Zern or James S. Saltzman; and for transactions which are $5,000 or more, both Barry K. Zern and James Saltzman, jointly."
 The printed portion of Provident's own form of Certified Copy of Resolutions also expressly provides:
 "3. The Bank may honor all such checks and other instruments for the payment or delivery of money or property when signed as authorized above, including any payable to the Bank or to any signer or other officer or employee of the corporation or to cash or bearer, and may receive the same in payment of or as security for the personal indebtedness of any signer or other officer or employee or other person to the Bank or in any transaction whether or not known to be for the personal benefit of any such person without inquiry as to the circumstances of their issue or the disposition of their proceeds, and without liability to the corporation, and without any obligation upon the Bank to inquire whether the same be drawn or required for the corporation's business or benefit."

for summary judgment be granted. Furthermore, Provident argues that it had no duty to obtain such knowledge by investigating Zern's intended use of the funds.

*Discussion.*

The precise issue presented by this motion is admittedly a novel one. However, the Court believes that its resolution can be effected by applying the guidelines established in a recent case decided by our Circuit Court, *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 880 (3d Cir. 1975), ("*Rochez II*").[5] *Rochez I* involved a sale of the stock of M.S.& R., Inc. ("MS&R") by Joseph Rochez ("Rochez"), executive vice president of MS&R, to Charles Rhoades ("Rhoades"), president of MS&R, in which the District Court found that Rhoades violated Rule 10b–5 by his failure to disclose to Rochez information that affected the value of the stock he purchased. In *Rochez II* the Court considered whether MS&R could be held secondarily liable as an aider and abettor. In discussing the elements needed to establish such secondary liability under 10b–5, the Court affirmed its previous adoption of the test of the Restatement of Torts, Section 876(b) (1939),[6] which states that a person is liable for harm resulting to a third person if he:

> knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself
> . . .

The Court set forth three elements required for liability as an aider or abettor: (1) existence of an independent wrongful act; (2) knowledge of the wrongful act's existence by the aider or abettor; and (3) substantial assistance given in effecting the wrong. The person who is primarily liable must have violated a securities law, and the aider and abettor must have known of the violation and by his conduct substantially assisted the primary violator in carrying out the unlawful scheme.[7] These three factors are similar to the test established by the Sixth Circuit in *SEC v. Coffey,* 493 F.2d 1304, 1316 (6th Cir. 1974), *cert. denied* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837, 1975. There the Court said:

> Without meaning to set forth an inflexible definition of aiding and abetting, we find that a person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation. (footnotes omitted).

Applying these criteria to the instant case satisfies this Court that Provident's activities, even as characterized by plaintiffs, are not sufficient to hold Provident liable as an aider or abettor. The first requirement—that an independent wrong exists—is easily met since plaintiffs have clearly alleged a 10b–5 violation in their charge that Zern fraudulently used assets of Zern, Saltzman & Co., Inc. to purchase shares of Aqua Gardens stock. However, application of the second requirement—knowledge—presents a more difficult problem. In *Rochez II* the Third Circuit stated that: "It has been held that liability for aiding and abetting may be found on less than actual knowledge of the illegal activity. How much or how little knowledge would seem to vary with the facts of each case. Courts that have considered

5. In *Rochez I,* 491 F.2d 402 (3d Cir. 1974), the Court affirmed the District Court's decision that found Rhoades guilty of violating Rule 10b–5, but remanded the case for a reconsideration of the issues of damages and the secondary liability of defendant MS&R. *Rochez III,* C.A. No. 74–2209, filed November 20, 1975, discussed the question of damages.

6. *See Landy v. FDIC,* 486 F.2d 139, 162, 163 (3d Cir. 1973), *cert. denied* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

7. *Rochez,* Slip Opinion, at 886–887.

the knowledge requirement have differed somewhat in its scope." [footnotes and citations omitted], at 886. Finding that there was no evidence that MS&R had knowledge of Rhoades' fraudulent activities, our Circuit Court affirmed the District Court's dismissal of the action against MS&R. Judge Staley, speaking for the Court in *Rochez II*, referred to the following three cases in connection with the statement that the amount of knowledge can vary with each case: *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135 (7th Cir. 1969); *Brennan v. Midwestern United Life Ins. Co.*, 417 F.2d 147 (7th Cir. 1969), *cert. den.*, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970); *Kardon v. National Gypsum Co.*, 69 F.Supp. 512 (E.D.Pa.1946). A review of these three cases in connection with our examination of the plaintiffs' allegations against Provident and the exhibits and affidavits convinces us that Provident's participation in this alleged fraudulent scheme falls short of meeting the knowledge test.

In support of its statement that "It has been held that liability for aiding and abetting may be found on less than actual knowledge of the illegal activity", the Court in *Rochez II* cited *Buttrey, supra*. In *Buttrey,* the Seventh Circuit affirmed the District Court's action in denying defendant's motion for summary judgment and discussed all three counts of plaintiff's complaint. Plaintiff, the trustee in bankruptcy for a brokerage firm, sued Merrill Lynch claiming that Merrill Lynch was liable for Security Act violations in connection with its dealings with Dobich, the organizer of the bankrupt who allegedly used fraudulently converted property of the bankrupt's customers in his securities transactions with Merrill Lynch. In affirming the District Court's decision, the Seventh Circuit appeared to rely on the allegations in the complaint that Merrill Lynch knew or should have known about Dobich's fraudulent activities. Without discussing the requisites for aiding and abetting, the Seventh Circuit simply held

that ". . . Count III states a cause of action for aiding and abetting." 410 F.2d at 144.

With respect to *Brennan v. Midwestern United Life Ins. Co.*, 417 F.2d 147 (7th Cir. 1969), *cert. den.* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970), and *Kardon v. National Gypsum Co.*, 69 F.Supp. 512 (E.D.Pa.1946), the two other cases discussed in connection with the knowledge requirement, the Court in *Rochez II* said:

> In *Brennan* the corporate defendant was found liable as an aider-abettor because it had knowledge of the fraudulent activity. The corporation knew of the misrepresentations, knew that funds were being used improperly, and failed to disclose this information even after inquiries were made. The court in *Brennan,* however, did not discuss at what point the secondary defendant's knowledge was enough to find liability. In *Kardon,* the court said a secondary defendant is liable if he simply knew of the fraudulent act. Defendant National was stipulated out of the case because plaintiffs were unable to allege any more than National's failure to disclose. (citations omitted). 527 F.2d at 866–887.

Plaintiffs do not try to come within *Rochez II* by claiming that Provident had actual knowledge of the alleged securities fraud. Rather, they allege that Provident's actions constituted a reckless disregard of its legal responsibility to its customer which, they claim, relying on *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973), is considered the equivalent of actual knowledge. In *Lanza,* however, the thrust of the Court's discussion of 10b–5 liability was to reject the use of a negligence standard and to establish that "proof of scienter is required in private actions in this Circuit." 479 F.2d at 1304. In making this ruling, the *Lanza* Court said, *Id.* at 1304–5:

> . . . our recent decision in *Shemtob v. Shearson, Hammill & Co.*, supra [448 F.2d 442 (2d Cir. 1971)], eliminat-

ed any doubt that proof of scienter is required in private actions in this circuit. There, in the context of a private action for damages, we stated that no violation of Rule 10b–5 occurs "in the absence of allegation of facts amounting to *scienter*, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme, or artifice to defraud. It is insufficient to allege mere negligence." [emphasis in original][8] 448 F.2d at 445.

A recent case very much on point, *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir. 1975), determined that a bank which transacted ordinary commercial business with the plaintiff could not be liable as an aider and abettor under 10b–5. The plaintiff, who had cosigned a corporate note, brought suit against three defendants: Starnes, the corporation's president; the bank which handled the transactions; and the bank's officer who had dealt with the plaintiff. The complaint charged Starnes with devising a scheme to defraud plaintiff and claimed that the bank was aiding Starnes by permitting the corporation to perpetrate this fraud. The Court held that the bank's activities were insufficient to establish aiding and abetting liability. In a particularly pertinent discussion, the Court said at p. 95:

> . . . If the alleged aider and abettor conducts what appears to be a transaction in the ordinary course of his business, more evidence of his complicity is essential.
>
> . . . . .
>
> If the securities involved are shares of common stock and someone aids and abets a fraud perpetrated in their sale, the culprit would be hard pressed to argue innocence once his awareness of the general sales activity was shown. On the other hand, if the document is barely a security at all, like a loan, then other independent commercial assumptions come into play, and the alleged aider-abettor may be unaware of any improper activity. Still, even for facially ordinary commercial transactions, a court may be influenced by a special duty imposed by the securities acts on the particular type of party, such as an insider, a controlling person, an accountant or a broker.

In its consideration of the knowledge requirement, the Fifth Circuit stated, *Id.*,

> [A]s Professor Bromberg points out, "the clue to liability is some sort of knowledge." A. Bromberg, Securities Law: Fraud § 8.5(582) (1974). *See SEC v. National Bankers Life Ins. Co., supra,* 324 F.Supp. at 195; *Kerbs v. Fall River Indus., Inc.,* 10 Cir. 1974, 502 F.2d 731, 740; *Zabriskie v. Lewis,* 10 Cir. 1974, 507 F.2d 546, 554. *Knowledge may be shown by circumstantial evidence, or by reckless conduct, but the proof must demonstrate actual awareness of the party's role in the fraudulent scheme.* [footnotes omitted]. (emphasis added).

Provident has referred us to an article by Professor David Ruder which discusses aiding and abetting under the securities laws. Ruder, *Multiple Defendants in Securities Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution,* 120 U.Pa.L.Rev. 597, 630–31. We find persuasive Professor Ruder's discussion of a bank's role in aiding and abetting which addresses a question somewhat similar to the one before us. His argument, which was also relied upon in *Woodward, supra,* 522 F.2d at 96 is as follows:

8. In determining what constitutes willful or reckless disregard for the truth the Court said:

> . . . the inquiry normally will be to determine whether the defendants knew the material facts misstated or omitted, or failed or refused, after being put on notice of a possible material failure of disclosure, to apprise themselves of the facts where they could have done so without any extraordinary effort. *Chris Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 363–364, 396–399 (2d Cir. 1973). The answer to the inquiry will of course depend upon the circumstances of the particular case, including the nature and duties of the corporate positions held by the defendants. 479 F.2d at 1306.

If all that is required in order to impose liability for aiding and abetting is that illegal activity under the securities laws exists and that a secondary defendant, such as a bank, gave aid to that illegal activity, the act of loaning funds to the market manipulator would clearly fall within that category and would expose the bank to liability for aiding and abetting. Imposition of such liability upon banks would virtually make them insurers regarding the conduct of insiders to whom they loan money. If it is assumed that an illegal scheme existed and that the bank's loan or other activity provided assistance to that scheme, some remaining distinguishing factor must be found in order to prevent such automatic liability. The bank's knowledge of the illegal scheme at the time it loaned the money or agreed to loan the money provides that additional factor. Knowledge of wrongful purpose thus becomes a crucial element in aiding and abetting or conspiracy cases.[9]

 Based upon our consideration of the foregoing authorities, we interpret the knowledge test as requiring allegations of facts upon which a jury could find that the alleged aider and abettor possessed some actual knowledge of the fraud being perpetrated under the securities act.[10] Although there may well be situations where knowledge may be shown by the defendant's irresponsible and reckless disregard of the truth, the evidence to be presented by the plaintiff must be such as would enable a jury to find that the defendant had or should have had actual knowledge of the fraudulent scheme.[11] In the case at bar, the allegations of reckless conduct against Provident are that it cashed two checks drawn on the corporation by its president in willful disregard of the signature card, the snap-out form, and the Corporate Resolutions, all of which provided that checks in excess of $5,000 required two signatures. However, there is nothing in the complaint, exhibits or affidavits which, in this Court's opinion, could provide a basis for a jury finding of actual knowledge on the part of Provident. The plaintiffs make no allegation that Provident was aware that Zern, the majority shareholder of Zern, Saltzman & Co., Inc. was using the proceeds of the checks to acquire for Zern, Saltzman & Co., Inc. stock in Aqua Gardens, a corporation in which he was the sole shareholder, at a price which was allegedly three times the price that he had paid for the stock. Accordingly, we hold that even when all of plaintiffs' allegations are accepted as the truth, Provident's ac-

9. Other parts of Professor Ruder's article were cited in *Rochez II*, 527 F.2d at 886, n. 10; *SEC v. Coffey*, 493 F.2d at 315, n. 23; 1316, n. 27; 1317, n. 31; *Landy*, 486 F.2d at 162, nn. 17 and 18. Furthermore, the Court in *Landy, Id.* at 164, found that the concept of aiding and abetting in the criminal context harmonized well with the "state of mind" criterion set forth in the Restatement of Torts in regard to civil liability, which comparison was made by Professor Ruder. Although Ruder's analysis was rejected in *Securities and Exchange Commission v. Spectrum, Ltd.,* 489 F.2d 535, 542 (2d Cir. 1973), the Court there was considering the liability of an attorney who allegedly had prepared an opinion letter in connection with the sale of securities.

10. *See also* the discussion in *Rochez II* of *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), where the Third Circuit said: "In determining liability, the court premised its holding on the fact that the bank had knowledge of the employees' activities. Therefore, if Rochez is to rely on this case, he must show that MS&R had the requisite knowledge of Rhoades' fraud." 527 F.2d at 888.

11. Plaintiffs suggest that *G & R Corporation v. American Security & Trust Company,* 523 F.2d 1164 (D.C. Cir. 1975), provides support for their position. We have considered this case and find that it is not relevant to the issue raised in the case at bar.

Plaintiffs also call to our attention *Securities and Exchange Commission v. National Stud. Mktg. Corp.,* 402 F.Supp. 641 (D.C.D.C.1975). However, that case is markedly different, for in *denying the motion for summary judgment* of Katz, a lawyer who allegedly aided and abetted a violation of the Federal securities laws, the Court found that a review of the evidence ". . . leaves little doubt that Katz *knowingly* aided and abetted . . ." 402 F.Supp. at 646.

tivities do not establish conduct sufficient to satisfy the knowledge test.

■ Finally, the third requirement—that the defendants have rendered substantial assistance—has not been shown by the plaintiffs. If liability is to be imposed upon a secondary defendant, the plaintiff must show a knowing participation or conscious involvement in the fraudulent scheme.[12] In determining whether the assistance rendered by an alleged aider and abettor in a securities fraud is substantial enough to make him liable for the act of another, the Third Circuit in *Landy v. FDIC*,[13] 486 F.2d 139, 163 (3d Cir. 1973), *cert. denied* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974), used the test of the Restatement of Torts § 436. The factors to be considered as set forth in the Restatement are: (1) the amount of assistance given by the defendant; (2) his presence or absence at the time of the tort; (3) his relation to the other person; and (4) his state of mind. In this case, it would appear that the amount of "assistance" allegedly given by Provident was not such as to connect Provident with the actual fraud. Although plaintiffs suggest that Provident may be considered the "proximate cause" of the alleged fraud, i. e., if Provident had never cashed the check, Zern could not have used those funds to purchase shares of Aqua Gardens stock, there has been no showing that Provident was involved in any manner with the actual purchase of Aqua Gardens stock. It also appears that the "state of mind" criterion is not satisfied as we discussed heretofore in connection with the "knowledge requirement".

Applying the principles set forth by the Third Circuit in *Landy* and *Rochez*,

we find that the record does not support plaintiffs' claim that Provident aided and abetted the alleged securities fraud in violation of Rule 10b–5.

■ Having determined that Provident is entitled to summary judgment on the Federal Securities Act claim, we must determine if we should retain Provident as a defendant in order to hear the pendent claims which allege violations of state law. The standard by which we are guided is set forth by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Under the doctrine of pendent jurisdiction, Federal courts have power to adjudicate claims based upon state law wherever there is a substantial federal claim "and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However

. . . pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be*

12. *See Rochez*, 427 F.2d at 888.

13. In *Landy*, 486 F.2d at 163, the Court also examined the concept of aiding and abetting as applied in the criminal context and said:

. . . In *Nye & Nisson v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)), the Supreme Court stated:

In order to aid and abet another to commit a crime, it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed."
This principle is well established and has been recognized in this circuit. See, e. g., *United States v. Barber*, 429 F.2d 1394 (3d Cir. 1970).

58

*dismissed as well.* [emphasis supplied] [footnotes deleted].

In determining whether to exercise our discretion by hearing the pendent state law claims, we must consider (a) whether judicial economy, convenience and fairness to the litigants would be served by having the pendent state law claims determined in a single proceeding, (b) whether trying the pendent state law claims will cause jury confusion and (c) whether the pendent state claims present unsettled questions of state law. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Reed v. Philadelphia Housing Authority,* 372 F.Supp. 686 (E.D.Pa.1974); *Tauss v. Rizzo,* 361 F.Supp. 1196 (E.D.Pa.1973).

■ As stated above, the plaintiffs' pendent state law claims against Provident center on the obligations undertaken by a bank with respect to its customers and will involve interpretations of the Pennsylvania law regarding breaches of warranties and contracts of deposit. These claims involve areas of state law in which clear-cut guidelines have not been established. Furthermore, the considerations germane to the question of fraudulent conduct, which is the controlling issue in the federal claim, are materially different from the question to be determined under state law.[14] Application of the *Gibbs* standard [15] as well as a consideration of the three elements discussed above lead us to exercise our discretion by dismissing the state claim.[16]

For all of the aforementioned reasons, we grant the motion of defendant Provident National Bank for summary judg-

ment and decline to exercise our pendent jurisdiction as to Count V of the Complaint.

---

14. Cases in which courts considered maintaining state law claims on the basis of pendent jurisdiction after dismissal of Federal Securities Act claims include: *Lanning v. Serwold,* 474 F.2d 716 (9th Cir. 1973); *Fields v. Fidelity General Ins. Co.,* 454 F.2d 682 (7th Cir. 1971); *Bowman v. Hartig,* 334 F.Supp. 1323 (S.D.N.Y. 1971). *See also* cases cited in 3A *Moore's Federal Practice,* # 18.07 at 36 of 1973 Supplement.

15. The desirability of having a final determination of the state claim by state courts having more familiarity with the controlling legal principles, which was the main concern in

*Gibbs,* was reaffirmed in *Hagans v. Lavine,* 415 U.S. 528, 548, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). *But see Rosado v. Wyman,* 397 U.S. 397, 405–06, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

16. We are further persuaded that we should not exercise jurisdiction over the state claims by the fact that an action is pending in the Court of Common Pleas of Philadelphia County, December Term, 1974, No. 420, in which the same plaintiffs are suing many of the same defendants, alleging the issues raised by the pendent claim.