Richard GILMAN and Jonathan Gilman, Co-Executors of the Will of Patricia Alice Gilman, a/k/a Patricia A. Gilman

v.

SHEARSON/AMERICAN EXPRESS, INC.; Vernon Farnsworth, Jr.

Civ. No. 83–64–D.

United States District Court, D. New Hampshire.

Dec. 9, 1983.

Patrick T. Hayes, Lebanon, N.H., for plaintiff.

Wilbur A. Glahn, III, Manchester, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

Plaintiffs allege various violations surrounding defendants' dealings in securities. Defendants earlier moved to dismiss, and the Court found that the complaint was not adequate but granted leave to amend. Plaintiffs amended their complaint, and defendants again moved to dismiss.

■ On a motion to dismiss, the Court construes the material facts alleged in the complaint in the light most favorable to the nonmoving party. *DeRosa v. Chicago Title Insurance Company*, 681 F.2d 66, 68 (1st Cir.1982). The facts in the complaint are taken as admitted, and dismissal shall be ordered only if the nonmoving party is not entitled to relief under any set of facts it could prove. *Dunlap v. Aulson Corporation*, 90 F.R.D. 647, 654 (D.N.H.1981).

Defendants move to dismiss and argue that because plaintiffs have not moved to amend Count II, plaintiffs have not adequately pled fraud with particularity against defendant Shearson/American Express, Inc. This argument is specious. Plaintiffs amended paragraph 15 of the Complaint, Count I, to comply with the Court's Order. Paragraph 19 of Count II and paragraph 25 of Count III of the Complaint incorporate by reference all earlier paragraphs. Consequently, the adequacy of plaintiffs' pleadings in Count I extends to Counts II and III.

■ Defendants also move to dismiss for the reasons set forth in their earlier motion. Plaintiff asserts a private cause of action under New York Stock Exchange ("NYSE") Rules 405 and 435 and the National Association of Securities Dealers ("NASD") Rules of Fair Practice, Article III, Section 2.

NYSE Rule 405 provides:

Every member organization is required through a general partner, a principal executive officer or a person designated under the provisions of Rule 342(b)(1) to

(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

Supervision of Accounts

(2) Supervise diligently all accounts handled by registered representatives of the organization.

Approval of Accounts

(3) Specifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with a customer, provided, however, that in the case of branch offices, the opening of an account for a customer may be approved by the manager of such branch office but the action of such branch office manager shall within a reasonable time be approved by a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1). The member, general partner, officer or designated person approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval in writing on a document which is a part of the permanent records of his office or organization.

Common Sales Accounts

(4) To facilitate the isolated liquidation of securities valued at $1,000 or less registered in the name of an individual who does not have an account, and which are not part of any distribution, a member organization may sell the securities through a common sales account set up for the specific purpose of handling such sales without sending a periodic statement to the customer as required by Rule 409, provided:

(a) The customer is identified as the individual in whose name the securities are registered,

(b) The securities are received by the member, at or prior to the time of the entry of the order, in the exact amount to be sold in good delivery form,

(c) A confirmation is sent to each customer,

(d) All proceeds of such sales are paid out on or immediately following settlement date, and

(e) The record made in the common sales account includes as to each transaction: customer's name and address, name and amount of securities to be sold, date received, date sold, amount per share, total amount credited to the account, total amount of check issued to the customer and the date of disbursement.

*Colman v. D.H. Blair & Co., Inc.,* 521 F.Supp. 646, 648, n. 1 (S.D.N.Y.1981).

NYSE Rule 435 provides, in pertinent part:

No member, member organization, or allied member therein shall:

(1) Effect on the Exchange purchases or sales for any account in which he or it is directly or indirectly interested, which purchases or sales are excessive in view of his or its financial resources or in view of the market for such security.

. . . .

(4) Directly or indirectly participate in or have any interest in the profits of a manipulative operation or knowingly manage or finance a manipulative operation.

Defendants' Memorandum of Law, p. 12, n. 3.

Article III, Sec. 2, of the NASD Rules states:

Section 2: In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

*Colman v. D.H. Blair & Co., Inc., supra,* 521 F.Supp. at 648, n. 1.

Defendants move to dismiss for plaintiffs' failure to state a claim and argue that no cause of action is stated under these rules as they provide no express individual remedy to a customer, but rather provide remedies for the NYSE and NASD against members.

Implied securities regulation actions first exhibited in *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), and later elaborated by *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), have been limited more recently by *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). Thus, while some courts have found an implied private cause of action under these and similar rules, the more recent and persuasive trend is away from implied private causes of action. *Compare, Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); *Wolfson v. Baker,* 444 F.Supp. 1124, 1133–34 (M.D.Fla.1978), *aff'd* 623 F.2d 1074 (5th Cir.1980), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981); *Faturik v. Woodmere Securities, Inc.,* 431 F.Supp. 894, 897 (S.D. N.Y.1977); *Rolf v. Blyth Eastman Dillon & Co., Inc.,* 424 F.Supp. 1021, 1041 (S.D.N. Y.1977), *modified on other grounds,* 570 F.2d 38 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Van Alen v. Dominick & Dominick, Inc.,* 441 F.Supp. 389, 403–04 (S.D.N.Y.1976), *aff'd* 560 F.2d 547 (2d Cir.1977); *McMillan v. E.F. Hutton & Company, Inc.,* 399 F.Supp. 1153, 1155 (N.D.Cal.1975); and *Starkman v. Seroussi,* 377 F.Supp. 518, 524 (S.D.N.Y.1974) (implied private cause of action); *with Thompson v. Smith Bar-*

*ney, Harris Upham & Co., Incorporated,* 709 F.2d 1413, 1419 (11th Cir.1983); *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 788 (3d Cir.1982); *Miley v. Oppenheimer & Company, Inc.,* 637 F.2d 318, 333 (5th Cir.1981); *Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980);[1] *Verrecchia v. Paine, Webber, Jackson & Curtis,* 563 F.Supp. 360, 365 (D.P.R.1982); *Holtzman v. Proctor, Cook & Co., Inc.,* 528 F.Supp. 9, 16 (D.Mass.1981); *Kirkland v. E.F. Hutton and Company, Inc.,* 564 F.Supp. 427, 443 (E.D.Mich.1983); *Juster v. Rothschild Unterberg, Towbin,* 554 F.Supp. 331, 333 (S.D.N.Y.1983); *Colman v. D.H. Blair & Co., Inc.,* 521 F.Supp. 646, 653–55 (S.D.N.Y.1981); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 542 (N.D.Ill.1981); *Birotte v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 468 F.Supp. 1172, 1174–80 (D.N.J. 1979); *Plunkett v. Dominick & Dominick, Inc.,* 414 F.Supp. 885, 889–90 (D.Conn. 1976); *Architectural League of New York v. Bartos,* 404 F.Supp. 304, 314 (S.D.N.Y. 1975); *Piper, Jaffray & Hopwood Incorporated v. Ladin,* 399 F.Supp. 292, 295–97 (S.D.Iowa 1975) (no implied private cause of action). Consequently, the court dismisses plaintiffs' claims brought under NYSE Rules 405 and 435, and NASD Rules of Fair Practice, Article III, Section 2.

Plaintiffs also allege violations of Sections 15(c)(1) and 15(c)(2), SEC Rules 15c1–2 and 15c1–7(a), 17 C.F.R. §§ 240.15c1–2, 240.15c1–7(a). The statute upon which this claim is grounded, 15 U.S.C. § 78*o*, provides:

> (c)(1) No broker or dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security (other than commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange of which it is a member by means of any manipulative, deceptive, or other fraudulent device or contrivance, and no municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security by means of any manipulative, deceptive, or other fraudulent device or contrivance. The Commission shall, for the purposes of this paragraph, by rules and regulations define such devices or contrivances as are manipulative, deceptive, or otherwise fraudulent.

> (2) No broker or dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange of which it is a member, in connection with which such broker or dealer engages in any fraudulent, deceptive, or manipulative act or practice, or makes any fictitious quotation, and no municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security in connection with which such municipal securities dealer engages in any fraudulent, deceptive, or manipu-

---

1. *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), held that violation of a rule of the NYSE could not give rise to an implied cause of action. The court in *Leist v. Simplot,* 638 F.2d 283 (2d Cir.1980), *aff'd,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), relied on the *Colonial Realty* holding and cited *Jablon* in support. *Leist v. Simplot, supra,* 638 F.2d 334–38, n. 8 (Mansfield, J., dissenting). The majority criticized this reliance on the "broad language" of *Jablon* and held that while NYSE Rule 405 seemed analogous to the rule at issue in *Colonial Realty* and thus there was no quarrel with the result, a violation of certain types of rules would give rise to an implied cause of action, especially when the rule imposes an explicit duty unknown in common law. *Leist v. Simplot, supra,* 638 F.2d 296, n. 11. Nor do NYSE Rule 435 or NASD Article III, Section 2, appear to impose such a duty.

lative act or practice, or makes any fictitious quotation. The Commission shall, for the purposes of this paragraph, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative and such quotations as are fictitious.

Defendants seek dismissal on two grounds: first, that plaintiff has failed to allege that the transactions were over-the-counter, i.e., not effectuated through a national exchange; and, second, that plaintiff has failed to state a claim because defendant Farnsworth was not a broker/dealer.

Plaintiff states in paragraph 5 of the Complaint, "[a]t all times relevant to this action, Farnsworth was engaged in the securities business as a broker-dealer, ...." The Court on a motion to dismiss takes this allegation as true. For present purposes, therefore, plaintiffs have identified defendant Farnsworth as a broker/dealer.

Defendants further argue that the Complaint nowhere identifies any of the securities and/or transactions upon which this suit is based. Defendants consequently claim that since Sections 15(c)(1) and 15(c)(2) apply only to transactions in over-the-counter stocks, and since plaintiffs have failed to identify the transactions complained of, plaintiffs have failed to state a claim under these sections.

■ Sections 15(c)(1) and 15(c)(2) apply to transactions in securities "otherwise than on a national securities exchange" of which a broker or dealer is a member. These sections are inapplicable if the securities involved in the lawsuit were traded on a national exchange. *Jennings v. Boenning & Company,* 388 F.Supp. 1294, 1300 (E.D.Pa.1975); *Livingston v. Weis, Voisin, Cannon, Inc.,* 294 F.Supp. 676, 680 (D.N.J. 1968); *Lorenz v. Watson,* 258 F.Supp. 724, 734 (E.D.Pa.1966). Plaintiffs' amended complaint identifies numerous securities, but nowhere lists the exchange, if any, on which they are traded. Defendants assert that plaintiffs must allege that there were transactions in over-the-counter securities, i.e., securities traded otherwise than on a

national exchange. At this preliminary stage of the action, however, the Court views the complaint in the light most favorable to the plaintiff, and thus here denies defendants' motion.

■ Plaintiffs also seek to imply a private right of action pursuant to Section 17(a). The statute upon which this claim is grounded, 15 U.S.C. § 77q(a), provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The First Circuit recently provided a backdrop for the issue of whether a private right of action exists under Section 17(a). The district courts of this circuit that have considered this question have also held that such a private right of action does not exist. *E.g., Kaufman v. Magid,* 539 F.Supp. 1088, 1097–98 (D.Mass.1982); *Manchester Bank v. Connecticut Bank & Trust Co.,* 497 F.Supp. 1304, 1314 (D.N.H.1980); *Dyer v. Eastern Trust & Banking Co.,* 336 F.Supp. 890, 903–05 (D.Me.1971). We decline, however, to base our decision on this ground which is the subject of substantial dispute and on which the circuits are split. *Compare Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808 (9th Cir.1981) (holding that § 17[a] supports a private right of action) *and Kirshner v. United States,* 603 F.2d 234 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979)

(same) *and Newman v. Prior,* 518 F.2d 97 (4th Cir.1975) (same) *and Surowitz v. Hilton Hotels Corp.,* 342 F.2d 596 (7th Cir.1965), *rev'd on other grounds,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (same) *with Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982) (holding that § 17[a] does not support a private right of action) *and Greater Iowa Corp. v. McLendon,* 378 F.2d 783 (8th Cir.1967) (same). The Supreme Court has declined to decide the issue. *Herman & MacLean v. Huddleston,* [——] U.S. [——], [——] n. 2, 103 S.Ct. 683, 685 n. 5, 74 L.Ed.2d 548 (1963). *Cleary v. Perfectune, Inc.,* 700 F.2d 774, 779 (1st Cir.1983).

Plaintiff focuses on the four-part test of *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2087, which determines whether a private right of action may be implied from a federal statute. In the light of the court's detailed explanation in *Hill v. Der,* 521 F.Supp. 1370, 1373–78 (D.Del.1981), of *Cort v. Ash,* its progeny, and their relationship to Section 17(a), this Court remains unconvinced that Section 17(a) implies a private right of action. *See Massaro v. Vernitron Corporation,* 559 F.Supp. 1068 (D.Mass. 1983). Consequently, defendants' motion to dismiss is granted in this part.

Defendants also move pursuant to Rule 12(b)(6) and argue that plaintiffs do not state a claim under § 10(b) or Rule 10b–5 because the complaint does not allege scienter.

In order to state a claim under § 10(b) or Rule 10b–5, plaintiffs must allege that defendants acted with 'intent to deceive, manipulate, or defraud'. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 1381–82 n. 12, 47 L.Ed.2d 668 (1976). While allegedly reckless conduct may meet the scienter requirement, *id., Cook v. Avien, Inc.,* 573 F.2d 685, 692 (1st Cir.1978), negligent conduct will not. *Ernst,* 425 U.S. at 193, 96 S.Ct. at 1380–81.

*Downey v. Vernitron Corp.,* 559 F.Supp. 1081, 1085 (D.Mass.1982). Paragraph 15 of the complaint states that defendants "employed a scheme or artifice to defraud plaintiff". This allegation meets the "intent to manipulate" requirement in *Ernst & Ernst v. Hochfelder, supra.* Consequently, plaintiffs adequately allege scienter under § 10(b) and Rule 10b–5.

Defendants argue that plaintiffs fail to allege that defendants acted intentionally or even recklessly and that, therefore, plaintiffs have failed to state a cause of action under Section 10(b) and Rule 10b–5. Plaintiffs, however, incorporate paragraphs 1 through 18 of Count I in paragraph 19 of Count II. Paragraph 20 of Count II states that defendant Shearson/American Express, Inc., "deliberately or recklessly" acted or failed to act. These allegations which refer back to Count I adequately state a claim under Section 10(b) and Rule 10b–5.

Finally, since plaintiffs do state a cause of action against defendant Farnsworth, the Court need not address defendants' contention under *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 38 A.L.R.Fed. 709 (3d Cir.1975), regarding the primary liability of Shearson/American Express as a "controlling person". The Court also will retain jurisdiction over any alleged pendent state law claims.

Accordingly, plaintiffs' claim brought under NYSE Rules 405 and 435; NASD Rules of Fair Practice, Article III, Section 2; and Section 17(a), 15 U.S.C. § 77q(a) are dismissed. Defendants' motion to dismiss is, therefore, denied in part and granted in part.

SO ORDERED.