**Elaine HEMPEL, Plaintiff,**

v.

**BLUNT, ELLIS AND LOEWI, INC. and Scott T. Nennig, Defendants.**

No. 87–C–384.

United States District Court,
E.D. Wisconsin.

Oct. 25, 1988.

314

Thomas Binder of Otjen & VanErt, S.C., Milwaukee, Wis., for plaintiff.

Charles Burroughs of vonBreisen & Purtell, S.C., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

AARON E. GOODSTEIN, United States Magistrate.

On March 31, 1987, plaintiff Elaine Hempel filed her complaint against Blunt, Ellis & Loewi and one of its brokers, Scott Nennig alleging violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission regulations. The complaint also alleged violations of the rules of the New York Stock Exchange and National Association of Securities Dealers, together with pendent state law claims for fraud and breach of, fiduciary duty.

This case had been assigned to Judge Joseph P. Stadtmueller who, on March 21, 1988, issued a decision and order granting the defendants' motion to dismiss, but giving plaintiff leave to file an amended complaint within thirty days. On April 20, 1988, plaintiff filed her amended complaint, and defendants again moved to dismiss.

On July 6, 1988, Judge Stadtmueller transferred the case to this court for all further proceedings, all parties having consented to the exercise of the magistrate's jurisdiction. This court then conducted a telephone status conference at which it was agreed that the defendants' motion to dismiss should be resolved before establishing pretrial deadlines.

The defendants' motion, which sets forth six reasons for dismissal, has been fully briefed. An appropriate starting point for the court's discussion would be the plaintiff's amended complaint.

## I. *The Amended Complaint*

At the outset, it should be noted that the amended complaint is much better organized than its predecessor and its four causes of action are now clearly delineated. The amended complaint alleges that the plaintiff, an elderly widow, opened an account with Blunt, Ellis & Loewi, Inc. in the early 1970's. She placed approximately $102,000.00, which represented most of her life savings, in the account. She was placed in the "conservative" investment category, and she remained in this category until her relationship with Blunt, Ellis & Loewi terminated in 1987. The amended complaint characterizes plaintiff as an "unsophisticated investor" who relied upon the purported expertise of the defendants.

There was limited investment activity in plaintiff's account between 1971 and December, 1984, when the events which are the subject matter of this lawsuit commenced. At that time, plaintiff was approached by defendant Scott Nennig, a securities salesman employed by Blunt, Ellis & Loewi. He allegedly falsely advised plaintiff that plaintiff's current broker was no longer with the company. Plaintiff then met with Nennig who allegedly advised her that her current holdings were no longer appropriate for her needs and objectives and suggested replacement investments.

Plaintiff alleges that Nennig misrepresented the posture of her present investments and the character of the proposed securities. She claims he misrepresented the urgency of the situation, failed to discuss the risks involved and other available alternatives. Plaintiff authorized Nennig to proceed with the suggested changes.

The amended complaint sets forth the particulars of the resultant transactions. In July of 1985, Nennig again contacted the plaintiff and allegedly stated that some of the securities purchased the previous De-

cember were no longer appropriate for her investment objectives. Plaintiff claims that Nennig made misrepresentations of a similar nature pertaining to the proposed transactions at this time. Plaintiff permitted Nennig to consummate the transactions, and the amended complaint again sets forth the particulars of same.

Needless to say, not all went well for the plaintiff. The value of her portfolio dropped by at least $50,000. In addition, she was charged approximately $7800 in commissions and fees in regard to these transactions. Plaintiff alleges that Nennig failed to advise her that the July, 1985 transactions could have been structured in a different manner which would have reduced the total commission.

Her amended complaint contains the following causes of action: 1) alleged violations of Rule 10b–5 (17 C.F.R. § 240.10b–5) which was promulgated pursuant to the Securities Exchange Act of 1934; 2) alleged violations of certain rules established by the New York Stock Exchange ("NYSE") and National Association of Securities Dealers ("NASD"); 3) a state law claim based upon fraud; and 4) a state law claim based upon a breach of fiduciary duty. Plaintiff seeks punitive damages in regard to the state law claims.

The court will now address each of the grounds presented by the defendants for dismissal.

## II. *Statute of Limitations*

Defendants have raised the issue of the statute of limitations as it pertains to plaintiff's federal claims under § 10(b) and Rule 10b–5. Neither the securities act nor the regulations contain any provision establishing a period of limitations for private actions. The defendants urge that the period of limitations found in companion sections of the Securities Exchange Act of 1934 govern this case. Those sections provide that no action shall be maintained unless brought within one year after the discovery of facts constituting the violation and within three years after such violation. See, 15 U.S.C. §§ 77m, 78i(e) and 78r(c).

In support of their position, defendants cite the recent case of *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3rd Cir.1988), in which the Third Circuit decided that a uniform rule based upon the federal scheme should be applied to private actions under § 10(b) and Rule 10b–5. *Id.* at 1550. The plaintiff submits that the rule enunciated by the Third Circuit is not binding on this court, and that the Wisconsin six year limitation's period for fraud actions applies.

This is an issue which Judge Stadtmueller did not comment on since it was first raised by defendants in response to the amended complaint. This court finds neither of the positions taken by the parties persuasive for the following reasons. First of all, while the court in *In re Data Access* makes a compelling argument for uniformity, the position taken by the Seventh Circuit is different. In *Norris v. Wirtz,* 818 F.2d 1329 (7th Cir.1987), Judge Easterbrook, writing for the majority, expressed displeasure with the current rule of requiring the court to find the most analogous state statute of limitations when the federal statute is silent. He proclaims, "[n]ever has the process been more enervating than in securities law." *Id.* at 1332. However, Judge Easterbrook then states,

> Only Congress or the Supreme Court can bring uniformity and predictability to this field; we have vowed to stand pat rather than make things worse by exchanging one conflict for another.

*Id.*

By "standing pat," this means that the current law of the Seventh Circuit of borrowing the most applicable state statute remains in force. See, *e.g. Sentry Corporation v. Harris,* 802 F.2d 229 (7th Cir. 1986). In that case, the parties agreed that Wis.Stats. § 551.59(5) was the most analagous state statute of limitations for the Rule 10b–5 cause of action.

The courts in this district have also applied Wis.Stats. § 551.59(5) to § 10(b) and Rule 10b–5 actions. See, *McLernon, et al. v. Source International, Inc., et al.,* 701

F.Supp. 1422 (E.D.Wis.1988); *Flynn, et al. v. Christenson*, case no. 80–C–414, slip op. at 4 (E.D.Wis., Curran, March 21, 1985).

As of December, 1984, the time when defendant Nennig first contacted the plaintiff, § 551.59(5) provided that,

> (5) No action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation, but the time specified for commencing such action shall be extended by reason of any fact and for the time specified in §§ 893.-13 and 893.16 to 839.23.

Parenthetically, § 551.59(5) had previously contained a one year discovery rule, but it was eliminated on April 27, 1984.

Plaintiff Elaine Hempel commenced the present action on March 31, 1987 by filing a complaint. The summons and complaint were served on the defendant Nennig on April 10, 1987 and on the defendant Blunt, Ellis & Loewi on April 9, 1987. Although Judge Stadtmueller granted defendants' motion to dismiss the original complaint, no judgment dismissing this action was entered. The plaintiff was given permission to amend her original complaint which did contain allegations forming the basis of her federal claims.

The defendants' motion to dismiss the amended complaint on the ground of the statute of limitations will be denied.

### III. *First Cause of Action: Rule 10b–5*

■ In her first cause of action, plaintiff claims that the defendant engaged in fraud and excessive trading or "churning" of her account. The defendants claim that the allegations of fraud fail to satisfy the particularity standard required by Rule 9(b) Fed.R.Civ.P., and that the allegations regarding churning are insufficient to state a cause of action.

#### A. *Fraud*

Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The defendants contend that the amended complaint is filled with many conclusory allegations concerning misrepresentations and omissions. The only specific misrepresentation alleged, say the defendants, is that Nennig advised the plaintiff that the person that was her broker no longer worked with Blunt, Ellis & Loewi. The defendants submit that since this misrepresentation was not made in connection with any securities' transactions, it cannot serve as a basis for § 10(b) fraud.

Defendants' position was more persuasive when applied to the original complaint. The amended complaint, however, alleges that in regard to the December, 1984 events, Nennig made misrepresentations to plaintiff concerning the appropriateness of her current holdings and of their suggested replacement, he made misrepresentations regarding the urgency for her to act, and he omitted to advise her of the risks involved. As regards the parties' contact in July, 1985, the amended complaint alleges that Nennig made similar misrepresentations regarding the securities plaintiff had purchased in December. Plaintiff also alleges that Nennig failed to inform her about how the commissions she was required to pay could have been reduced or avoided. The amended complaint specifically identifies the securities and the number of shares and amounts of money involved.

It is true that these allegations are not so particular as to contain evidentiary detail, *e.g.* Nennig's exact words are not set forth, but the federal rules do not require such detailed pleading. Rule 9(b) must be read in conjunction with 8(f) which provides that "pleadings shall be construed to do substantial justice," and 8(e) which calls for simple and direct pleading.

The plaintiff has provided the defendants with an outline of her cause of action for fraud and misrepresentation under Rule 10b–5. As the court stated in *Caliber Partners, Ltd. v. Affeld*, 583 F.Supp. 1308, 1311 (N.D.Ill.1984),

To plead a cause of action for fraud, plaintiffs need not allege evidentiary details that will be used to support the claim at a later date ... they need only set forth the basic outline of the scheme, who made what misrepresentations and the general time and place of such misrepresentations.

The allegations in plaintiff's first cause of action as they relate to fraud and misrepresentation are now particular enough to withstand the defendants' motion to dismiss.

B. *Churning.*

▆ The same conclusion cannot be reached with regard to the allegations regarding alleged excessive trading. As stated in the case of *Frota v. Prudential-Bache Securities, Inc.*, 639 F.Supp. 1186, 1190 (S.D.N.Y.1986),

"Churning occurs when a securities dealer creates commissions 'by inducing transactions in the customer's account which are disproportionate to the size and character of the account.'" (citations omitted).

The Seventh Circuit has indicated that there is no single test for churning, but that the plaintiff must allege,

(1) that the broker exercised control over the transactions in the account and

(2) that the amount of trading was excessive.

*Costello v. Oppenheimer & Co., Inc.*, 711 F.2d 1361, 1368 (7th Cir.1983).

In this case, as far as the first element is concerned, the plaintiff alleges that due to her lack of sophistication and reliance on Nennig, the defendants exercised de facto control over her account. Although this is disputed by the defendants, who further contend that plaintiff had a non-discretionary account, for purposes of withstanding a motion to dismiss, plaintiff's amended complaint is sufficient.

The second element of excessive trading is more troublesome. Judge Stadtmueller felt that the original complaint was deficient for failing to particularize the "turnover ratio" in plaintiff's account. This is a ratio computed by comparing the total cost of purchases made during a given period to the amount invested. *Costello*, 711 F.2d at 1369 n. 11.

In her amended complaint, plaintiff has set forth the number of transactions, the securities involved, the approximate dates and the proceeds and commission generated. In addition, plaintiff submits that a mathematical formula such as the turnover ratio should not be the sole guide, but that the trades must be viewed in light of the customer's sophistication, her objectives, market conditions and the size of the commissions. See, *Frota*, 639 F.Supp. at 1191; *Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231, 1237 (S.D.N.Y. 1983).

If this court were to rely solely on the turnover rate, the "churning" claim would certainly fail. In the commentary cited by the *Costello* court for its definition of turnover ratio (711 F.2d at 1369 n. 11), it is said that the annual turnover ratio will not be considered excessive unless it approaches six. See, Note, Churning by Securities Dealers, 80 Harv.L.Rev. 869 (1967).

At best, during the period in question from December, 1984 through July, 1985, plaintiff's account may have been sold or turned over twice. She was allegedly induced to sell her holdings in the John Nuveen Tax Exempt Bonds and in the American Capital Bond Fund in December. With these proceeds, shares in Kemper Option Income Fund were purchased. Then, the following July, plaintiff again was allegedly induced to sell the majority of her shares in Kemper and purchase shares in Oppenheimer Premium Income Fund and American Capital Government Securities Fund.

Even minimizing the numerical consideration and emphasizing the other factors such as the alleged inappropriateness of these trades in light of plaintiff's investment objectives, or the total commissions generated, this court is not persuaded that the allegations in plaintiff's amended complaint state a cause of action for churning. The particulars of the trades have been alleged, but they cannot be considered excessive. The amended complaint is suffi-

cient to state a cause of action for violations of Rule 10b–5, but churning is not one of them.

### IV. *Second Cause of Action: Violations of NYSE and NASD Rules*

■ The central issue here is whether or not violations of the rules of the NYSE or the NASD can form the basis for a private cause of action. Judge Stadtmueller was unable to answer this question as regards plaintiff's original complaint since it failed to specify the rules upon which the claim was based. Judge Stadtmueller noted that this was essential since the law in this circuit provides that,

> The touchstone for determining whether or not the violation of a particular rule is actionable should properly depend upon its design for the direct protection of investors.

*Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135, 142 (7th Cir. 1969). The particular rule involved in *Buttrey* was the "know your customer" rule of the NYSE (rule 405).

Plaintiff Hempel, in her amended complaint, specifically refers to rule 405 of the NYSE and various provisions of the rules of fair practice enacted by the NASD which are usually referred to as the "suitability" rule.

The defendants submit that *Buttrey* is no longer "good law" in this circuit, citing language from the case of *Streckert v. Blunt, Ellis & Loewi, Inc.,* case no. 79C 1337, slip op. at 12 (N.D.Ill. March 30, 1981), to the effect that the United States Supreme Court disposed of this issue in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

The accounting firm in *Touche Ross & Co.* was sued by the trustee of a brokerage firm whose books it audited and certified. The trustee claimed that the audit was improper, and that the accounting firm breached certain duties imposed by § 17(a) of the Securities Exchange Act of 1934 and implementing regulations. The Supreme Court held that § 17(a) did not provide a basis for an implied private cause of action. The court found that § 17(a) simply re-

quired that regulated businesses keep certain records and file reports; it found that the information in these reports was to assist the Securities Exchange Commission and not directly confer a private remedy upon investors. 442 U.S. at 569–570, 99 S.Ct. at 2485–86.

The court in *Touche Ross & Co.* distinguished its holding from its decision in *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) which found an implied cause of action for shareholders under § 14(a) of the 1934 Act. The court said that it was now (at the time of its decision in *Touche Ross & Co.*) adhering to a stricter standard, and that not all sections of the 1934 Act imply private causes of action. *Id.* at 577–578, 99 S.Ct. at 2489–90.

The issue does not appear to this court as clear cut as the *Streckert* court or the defendants contend. It seems that *Buttrey* remains the prevailing law in this circuit, and the question to be addressed is whether the particular rule, be it one found under the 1934 Act or the regulating associations, was promulgated primarily to protect the public. *Buttrey* applied a two-prong analysis; first, determine whether the rule is designed for the direct protection of investors (410 F.2d at 142); and then, whether the alleged conduct is "tantamount to fraud." (410 F.2d at 143).

The "know your customer" and "suitability" rules are more than mere recordkeeping requirements as seen in *Touche Ross & Co.* or *Sacks v. Reynolds Securities, Inc.,* 593 F.2d 1234 (D.C.Cir.1978) [Rule 412 of NYSE providing a mechanism for transfer of a customer's account was recordkeeping and did not provide basis for private cause of action.]

Even though more recent decisions in other jurisdictions have held that there is no implied private cause of action (see compilation of such cases in *Gilman v. Shearson/American Express, Inc.,* 577 F.Supp. 492, 494–495 (D.N.H.1983)), this court believes that *Buttrey* has continued viability. The plaintiff has now satisfied the deficiencies noted by Judge Stadtmueller. The rules of the NYSE and NASD set forth in her second cause of action are designed for

the protection of investors, and the alleged conduct of the defendants is tantamount to fraud. Plaintiff's second cause of action is sufficient to survive the defendants' challenge.

## V. *Third and Fourth Causes of Action: State Law Claims*

█ In view of this court's conclusion that the plaintiff has stated certain federal causes of action, the defendants' claim that the state law causes cannot be sustained on the basis of pendent jurisdiction fails.

As to plaintiff's claim for punitive damages, Judge Stadtmueller was of the opinion that it was sufficiently raised in the original complaint, and the allegations in the amended complaint in that regard have not been diminished.

That leaves the defendants' objection that the amended complaint fails to state a claim under Wisconsin law for breach of fiduciary duty in that a broker does not have such a duty to a customer with a non-discretionary account absent special circumstances. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck,* 127 Wis.2d 127, 134, 377 N.W.2d 605 (1985).

The plaintiff has presented certain allegations which, at least for the purpose of surviving a motion to dismiss, constitute "special circumstances." Briefly, the plaintiff has alleged that she was not knowledgeable about the market and placed complete reliance in the defendants believing that they were acting in her best interests.

Defendants submit that allegations of "trust and confidence," even with an unsophisticated investor, are not sufficient under the *Boeck* standard. We are dealing here with matters of degree which necessitates a greater factual exploration. The defendants may indeed be correct that under the facts of this case, there was no fiduciary duty under Wisconsin law between plaintiff and defendants. However, at this stage, the plaintiff has sufficiently alleged a confluence of factors which can be considered special circumstances. Plaintiff's state law claims are sufficient.

Accordingly, IT IS HEREBY ORDERED that the defendants' motion to dismiss plaintiff's amended complaint is DENIED, except as regards plaintiff's claim of churning, and as to that claim, defendants' motion is GRANTED.

IT IS FURTHER ORDERED that a telephone status conference will be held on *Tuesday, November 15, 1988 at 9:00 A.M.* to discuss the completion of discovery and other scheduling matters.