**Kelly G. COOK, Plaintiff,**

v.

**GOLDMAN, SACHS & CO., William F. Miller, III, Keystone Medical Corporation, and James Stuckey, Defendants.**

Civ. A. No. H–89–1267.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 5, 1989.

David C. Redford, Dotson, Babcock & Scofield, Houston, Tex., for plaintiff.

Robin C. Gibbs, Houston, Tex., for Goldman, Sachs & Co.

Charles T. Newton, Jr., Vinson & Elkins, Houston, Tex., for William F. Miller, III.

Phillip C. Short, Houston, Tex., for Keystone Medical Corp.

Tracy N. Dubose, Montgomery, Tex., for James Stuckey.

## ORDER

HITTNER, District Judge.

Pending before this Court are motions to dismiss filed by defendants Goldman, Sachs & Co. (Document # 18), William F. Miller, III (Document # 25), Keystone Medical Corporation (Document # 19), and James Stuckey (Document # 20). After considering the motions, the submissions of the parties, and the applicable law, this Court denies the motions to dismiss.

Plaintiff Kelly G. Cook ("Cook") alleges that he made purchases and sales of securities through William F. Miller, III ("Miller") and Goldman, Sachs & Co. ("Goldman") for a number of years. Cook purchased 30,000 shares of Keystone Medical Corporation ("Keystone") stock in January 1988, allegedly upon Miller's recommendation.

In October 1988, Cook agreed to invest an additional $408,000 for preferred stock. Cook alleges this agreement was a culmination of negotiations between Miller and James Stuckey ("Stuckey"), chairman of the board of Keystone. All parties admit that the money was transferred to Keystone. The money was deposited into Keystone's operating account, but no stock was issued or delivered to Cook at the time of the transfer. To date, no preferred stock has been issued, although Stuckey agrees that Cook is entitled to the stock. *See* Defendant James Stuckey's First Amended Answer and Motion to Dismiss at 5 [hereinafter Stuckey's First Amended Answer].

Cook alleges fraud, misrepresentation, and violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982); Securities and Exchange Commission ("SEC") rule 10b–5, 17 C.F.R. 240.10b–5 (1987); section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2) (1982); rule 405(q) of the New York Stock Exchange; and the Rules of Fair Practice promulgated by the National Association of Securities Dealers ("NASD"). Cook contends that the defendants' misrepresentations occurred in connection with the initial stock purchase of 30,000 shares, as well as in the subsequent contractual agreement to purchase preferred stock in a secondary offering.[1] Cook submits that he has lost a portion of his investment in the 30,000 shares he initially purchased and the $408,000 he set aside for the second Keystone offering.

Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants allege that Cook has failed to state a claim upon which relief can be granted. All defendants allege that Cook's complaint fails (1) to allege a "sale" or purchase as required by rule 10b–5 and section 12(2) and (2) to show that any facts support the "in connection with" a sale or purchase requirements under 10b–5. Further, Goldman and Miller move to dismiss on the basis that they are not sellers of any securities in the present action and further, that no private cause of action exists for violations of rule 405(q) and the NASD rules.

The Court's inquiry under a motion to dismiss is limited to the content of the complaint. Fed.R.Civ.P. 12(b)(6). The complaint is construed in light most favorable to the plaintiff, and its allegations are tak-

---

1. Cook's suit also alleges state-law causes of action that are not challenged in the defendants' motions to dismiss.

en as true. *Jenkins v. McKeithen*, 395 U.S. 411, 412, 89 S.Ct. 1843, 1845, 23 L.Ed.2d 404 (1969). The complaint will not be dismissed unless it appears the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1969).

■ The Court finds sufficient facts before it to conclude that Cook has alleged a transaction that, if proved, would meet the statutory requirements of both rule 10b–5 and section 12(2). An action under rule 10b–5 requires proof of three elements: (1) a material misrepresentation (2) in connection with (3) the purchase or sale of a security. *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 729–35, 95 S.Ct. 1917, 1922–25, 44 L.Ed.2d 539 (1975). The defendants argue that Cook has failed to allege sufficient facts as to the latter two elements. As the issue of a "sale" is essential to the other grounds for dismissal, the Court first examines the complaint for a sufficient indication of a "sale" within the securities statutes.

■ The Court is guided by the statutory definition of "sale" found in both federal securities acts under which the suit arose. The Securities Exchange Act of 1934 ("1934 Act") defines "sale" and "sell" each to include "a contract to sell or otherwise dispose of." 15 U.S.C. § 78c(a)(14) (1982). Likewise, the Securities Act of 1933 ("1933 Act") defines "sale" to include every "contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(3) (1982).

Courts have interpreted the statutory definition of "sale" broadly. In *Blue Chip Stamps*, 421 U.S. at 761, 95 S.Ct. at 1937, the Supreme Court made clear that persons with contractual rights to purchase or sell securities are recognized as "purchasers" or "sellers" of securities for rule 10b–5 purposes. The term "sale" in the 1933 Act includes "every attempt or offer to dispose of, or solicitation of an offer to buy a security, or interest in a security, for val-

ue." *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 2077, 100 L.Ed.2d 658 (1988).

All parties recognize that Cook made an initial purchase of 30,000 shares of Keystone. Subsequent to the initial purchase, Cook alleges he agreed with Miller and Stuckey, who was acting as an officer of Keystone, to purchase Keystone preferred stock. Cook pledged $408,000 to Keystone. Although they dispute the content of the agreement, the defendants do not dispute that an agreement existed. Upon its review, this Court finds that Cook's complaint alleges a short and plain statement of the claim of a sale showing that Cook is potentially entitled to relief and that it states facts constituting a cause of action. *See Conley*, 355 U.S. at 45, 78 S.Ct. at 101.

■ must assert that the alleged misrepresentation was "in connection" with the alleged sale in order to make it actionable under rule 10b–5. *Santa Fe Industries*, 430 U.S. at 462, 97 S.Ct. at 1295; *Blue Chip Stamps*, 421 U.S. at 723, 95 S.Ct. at 1919. The use of the words "in connection" with in rule 10b–5 indicates Congress's intent to protect against fraud in agreements to buy or sell, as well as with respect to completed sales, provided damages could be shown. *Commerce Reporting Co. v. Puretec, Inc.*, 290 F.Supp. 715, 718 (S.D.N.Y.1968); *see also Butterworth v. Integrated Resources Equity Corp.*, 680 F.Supp. 784, 785–786 (E.D.Va. 1988).

The courts, in furtherance of the policy to protect purchasers from fraud, have construed "in connection" liberally. *Superintendent of Insurance v. Bankers Life & Casualty*, 404 U.S. 6, 13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). "In connection with" may mean the fraudulent acts merely touched the sale. *Id.* 92 S.Ct. at 169; *see also Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir.1973) (noting that the language of "'[s]ection 10b must be read flexibly, not technically and restrictively'" (quoting *Superintendent of Insurance*, 404 U.S. at 12, 92 S.Ct. at 168)). Establishing a nexus between the defendants' fraud and plaintiff's transaction also satisfies the "in connection" requirement of rule 10b–5.

*Sargent v. Genesco, Inc.*, 492 F.2d 750, 763 (5th Cir.1974).

This Court concludes that Cook's complaint contains sufficient allegations to support the "in connection with" element of his cause of action. Cook alleges that "but for" negotiations with Miller and Stuckey during the period from July 1988 through October 1988 he would not have agreed to purchase Keystone preferred stock. Cook alleges that his purchase decision was based on the information supplied during the negotiations. Cook alleges, and Stuckey admits, that Cook was furnished with Keystone's outdated 10K forms during the negotiations. *See* Stuckey's First Amended Answer, *supra*, at 4. The defendants deny Cook's other allegations of misrepresentations as to, among other things, (1) inventory, goodwill, and other company assets; (2) the effectiveness or exclusivity of Keystone patents; (3) the nature of company loans made to enable individuals to exercise warrants; and (4) Keystone's net worth. Upon reviewing Cook's petition, this Court finds that Cook has alleged facts that, if proved, would support the "in connection" prong of the rule 10b–5 requirements.

Defendants Goldman and Miller move for dismissal on the grounds that they are not "sellers" for purposes of the securities laws. In *Pinter*, the Supreme Court held:

> The applicability of § 12 liability to brokers and others who solicit securities for purchases have been recognized frequently since the passage of the Securities Act. It long has been "quite clear" that when a broker acting as agent of one of the principals to the transaction successfully solicits a purchase, he is a person from whom the buyer purchases within the meaning of § 12 and is therefore liable as a statutory seller.

*Pinter*, 108 S.Ct. at 2078.

■ Goldman also contends that Cook fails to allege that he purchased a security "from one who sold them to serve his own financial or economic interest." Typically, a person who solicits the purchase will have sought or received a personal financial benefit from the sale, *Lawler v. Gil-*liam, 569 F.2d 1283, 1288 (4th Cir.1978), or will have received a brokerage commission, *Cady v. Murphy*, 113 F.2d 988, 990 (1st Cir.), *cert. denied*, 311 U.S. 705, 61 S.Ct. 175, 85 L.Ed. 458 (1940). Recently the Court added another type of seller to the category. In *Pinter*, the Court found that a person who solicits to buy or purchase in order to serve the financial interest of the owner is may also be liable under section 12(1), even absent a showing that he expects to participate in the benefits the owner enjoys. *Pinter*, 108 S.Ct. at 2082.

In the instant case, Miller allegedly solicited Cook's purchases for Keystone. Cook alleges Miller was acting in his capacity as an equity owner of Keystone, as well as acting as an officer of and agent for Goldman. There are sufficient facts to state a claim for relief against Miller.

■ Goldman has potential "controlling person" liability for Miller's acts under section 20 of the 1934 Act, 15 U.S.C. § 78t (1982). The "controlling person" rule provides that every person who directly or indirectly controls the acts of another will be jointly and severally liable to the same extent as that controlled person for violations of rules and regulations of the 1934 Act.

■ Courts, however, do not limit secondary liability solely to that found in the statute. Brokerage firms have not been able to avoid secondary liability simply by showing ignorance, purposeful or negligent, of the acts of their registered representatives. To do so would contravene Congress's intent to protect the public, particularly unsophisticated investors, from fraudulent practices. The controlling person rule does not exclude application of the common-law principles of agency, in particular the doctrine of respondeat superior, in an action brought under the 1934 Act. *Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111, 1118–19 (5th Cir. 1980). Cook alleges, and Miller and Goldman admit, that Miller is an officer and agent of Goldman. Goldman specifically denies that Miller was acting as agent during the Keystone transactions. *See* First Amended Answer and Motion to Dismiss of

Defendant Goldman Sachs & Co. at 3. Cook, however, alleges that his only contacts with Miller during the Keystone transactions occurred at Goldman's offices. The Court concludes that Cook alleges sufficient facts to support a claim against Miller and Goldman in their respective capacities as sellers.

 Defendants Goldman and Miller also move to dismiss Cook's causes of action based on rule 405(q) and the NASD rules. Defendants allege that these rules are merely self-regulatory and do not incorporate private causes of action. Cook recognizes the absence of an express private cause of action under these rules, but alleges that a private remedy flows from the policy underlying the rules. The 1934 Act expressly requires any national securities exchange to adopt rules embodying standards for regulation of its member firms as a prerequisite to SEC registration. *See* 15 U.S.C. § 78f(b)(1)–(5) (1982).

The Court concludes that an implied private cause of action exists for violations of rule 405(q) and the NASD rules. A private cause of action has been implied in another circuit for violations of rule 405. *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135, 137 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969). The *Buttrey* court held that:

> The touchstone for determining whether or not the violation of a particular rule is actionable should properly depend upon its design "for the direct protection of the investors." Here one of the functions of Rule 405 is to protect the public, so that permitting a private action for its violation is entirely consistent with the purposes of the statute.

*Id.* at 142 (citation omitted) (quoting Lowenfels, *Implied Liabilities Based on Stock Exchange Rules,* 66 Colum.L.Rev. 12, 29 (1966)); *see also Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.1966), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (holding that a private cause of action under the Securities Exchange Act of 1934 may be suggested by explicit statutory condemnation of certain conduct).

Similarly, a private cause of action has been applied under the NASD rules where the rule violated serves to protect the public. *SEC v. First Securities Co.,* 463 F.2d 981, 988 (7th Cir.1972), *cert. denied,* 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972); *see also Evans v. Kerbs & Co.,* 411 F.Supp. 616, 621–24 (S.D.N.Y.1976) (holding that a private action on behalf of customer against his broker may be available for violations of NYSE and AMEX margin maintenance rules).

Based on the foregoing, the Court

ORDERS that the defendants' motions to dismiss are DENIED.