**Ross PYLE, Plaintiff,**

v.

**John F. WHITE, individually and d/b/a John F. White & Associates, and Hibbard Brown & Company, Inc., Defendant.**

**No. IP 89–878C.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 27, 1992.

---

B. Keith Shake, Henderson, Daily, Withrow & DeVoe, Indianapolis, Ind., for plaintiff.

Anne N. DePrez, Barnes & Thornburg, Indianapolis, Ind., Richard F. Horowitz, Sigmund S. Wissner–Gross, Heller, Horowitz & Feit, P.C., New York City, for defendant.

## ENTRY

BARKER, District Judge.

This litigation involves alleged violations of state and federal securities laws as well as various state common law claims. Plaintiff Ross Pyle filed his original complaint in the Marion Superior Court, Civil Division, on July 24, 1989. The defendants

subsequently removed the case to this court. On January 10, 1990, the plaintiff filed his Amended Complaint. Discovery has been conducted and various sets of contentions filed. Now before the court is the Defendants' Motion for Partial Summary Judgment.

## I. BACKGROUND

Ross Pyle is "a college graduate (engineering) and businessman...." Affidavit of Plaintiff, Ross S. Pyle, in Support of His Response to Defendants' Motion for Partial Summary Judgment ("Second Pyle Affidavit"), p. 1. The parties disagree about how sophisticated a businessman Pyle is.

Defendant John White was Pyle's insurance agent for several years and in 1983 set up a retirement plan for Premier Stamping Corporation, a business in which Pyle had a substantial (though apparently not exclusive) ownership interest. Prior to 1986, White placed funds accumulated through this retirement plan into insurance annuities.

However, in mid-1986, White and Pyle began working on investing Pyle's funds in other places. When the anniversary date for a given annuity approached, Pyle and White would have a meeting concerning possible reinvestment. Pyle claims that he told White that he wanted to preserve his capital, maintain an ability to sell, and limit his risk. Second Pyle Affidavit, p. 2. Pyle made twelve reinvestments with White's assistance, eight of which are currently at issue.[1]

The investments, as it turned out, were not particularly good ones, and Pyle lost a substantial amount of the funds that he had invested. The parties disagree about the extent to which Pyle appreciated how speculative these investments were when he made them. Pyle never received prospectuses from White concerning the investments. Pyle did sign what he termed "application forms" in connection with these investments, although he claims not to have been given the opportunity to read the forms. Second Pyle Affidavit, p. 5. He got copies of parts of these forms when he received in January, 1988, what has been referred to as a "Redbook," which contained information about the investments. When he received this Redbook, Pyle became aware that the maturity periods on the investments were longer than White had apparently led him to believe. However, Pyle claims not to have learned about the poor quality of his investments until he talked with his accountant in late 1988. Second Pyle Affidavit, p. 6.

Pyle filed suit in state court on July 24, 1989. Currently before the court is the defendants' motion for partial summary judgment.

## II. DISCUSSION

Before reaching the parties' disputes, the court notes the points on which the parties agree and on which the defendants are entitled to summary judgment. First, the parties agree that Pyle's claim under section 12(1) of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77l(1), based on the defendants' failure to deliver prospectuses to Pyle, is barred by the one-year statute of limitations found in section 13 of the 1933 Act, 15 U.S.C. § 77m. Second, the parties agree that Pyle's claim under section 12(2) of the 1933 Act, 15 U.S.C. § 77l(2), with respect to Pyle's investment in VMS Mortgage Investors, L.P. II is barred by the three-year limitation period found in section 13 of the 1933 Act. Third, the parties agree that Pyle's section 12(2) claims based on misrepresentations with respect to investment maturity dates are also time-barred. Accordingly, the defendants' motion for partial summary judgment is granted with respect to these three issues.

Five areas of contention remain on which the defendants claim that "there is no genuine issue as to any material fact" and that they are "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). First, the defendants claim that the plaintiff's re-

---

**1.** This court granted a motion to stay with respect to the remaining four investments. Entry of September 17, 1990.

maining claims under the 1933 Act are barred by applicable statutes of limitation. Second, the defendants argue that the plaintiff's federal unsuitability claims should be dismissed since such a cause of action does not exist under federal securities laws. Third, the defendants maintain that the plaintiff's claims under the Indiana securities laws with respect to the failure to deliver prospectuses and the lack of suitability are not actionable and should be dismissed. Fourth, the defendants claim that they are entitled to summary judgment on the plaintiff's common law fraud claims. Finally, the defendants argue that the plaintiff's breach of fiduciary duty claims are barred by the applicable statute of limitations.

### A. The 1933 Act Claims

■ While the plaintiff has conceded that his 1933 Act claims with respect to misrepresentations about maturity dates and about Pyle's investment in VMS Mortgage Investors, L.P. II, and for failure to deliver prospectuses are time-barred, he maintains that his other claims under sections 12(2) and 17 of the 1933 Act are not. Although the heading of his argument mentions section 17, he does not actually argue this point in his brief. As the defendants point out, the Seventh Circuit has declined to imply a private right of action under section 17(a). *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 942–943 (7th Cir.1989). The defendants are accordingly granted summary judgment in their favor on the plaintiff's claims under section 17(a) of the 1933 Act.

■ The plaintiff also claims that his section 12(2) claims based on White's delivery to him of misleading product information sheets are not time-barred. The plaintiff at this point in his argument, Plaintiff's Response to Defendants' Motion for Partial Summary Judgment ("Plaintiff's Response"), p. 8, takes the position that he received the product information sheets at the time that he signed the various subscription agreements, which "constituted 'prospectuses' violative of Section 12(2)." *Id.* However, in his affidavit, Pyle testi-

fied that he was not given any prospectus to read prior to making his investments; indeed, he testified that he came to White's office and simply signed forms as directed. Second Pyle Affidavit, p. 4. On the other hand, Pyle did not indicate in his deposition that he simply came to White's office to sign forms; rather, he testified that he would come to White's office with him and discuss choices among various investment options. Pyle Deposition, p. 121–122, 169.

Taking White's alleged misrepresentation and/or omission of material facts at the various times that Pyle came in to sign subscription agreements as the most recent series of actionable events under section 12(2), are the defendants correct in arguing that such claims are time-barred? The applicable statute of limitations is found in section 13 of the 1933 Act and provides: "No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence...." The defendants would thus be entitled to summary judgment on the limitations issue if the undisputed material facts established either that the plaintiff discovered or with reasonable diligence should have discovered the omissions prior to July 24, 1988 (one year before Pyle filed his complaint).

Pyle maintains that he did not actually discover the extent of the misrepresentations (except with respect to the maturity dates) until late 1988. Second Pyle Affidavit, p. 6. According to the defendants, however, the limitations period began to run at the latest in January, 1988, when the plaintiff received the Redbook containing information about the assets at issue. Citing *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2nd Cir.1983), the defendants argue that when Pyle received the Redbook and was thereby alerted to the allegedly longer-than-expected maturity periods for his investments, he had a duty to investigate further the circumstances surrounding his investments. The defendants conclude that a reasonably diligent investor would have been aware of the circumstances of

fraud in January, 1988, so that the plaintiff's complaint, filed on July 24, 1989, was beyond the one-year discovery period provided for in section 13.

Since the shortness of the maturity period was one of the investment criteria which Pyle expressly communicated to White, Second Pyle Affidavit, pp. 2–3, 7, the defendants' argument that a reasonably diligent investor, being surprised by knowledge of the maturity dates, would have investigated and discovered all the circumstances of the alleged fraud as of January, 1988, is persuasive. Although the defendants seem to suggest that Pyle was sufficiently concerned by what he learned from the Redbook to send it on to his accountant for further analysis, Defendants' Reply Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("Defendants' Reply"), p. 7, they do not offer any citation to the record in support of that conclusion.

On his part, Pyle testified in his affidavit that, despite what he learned in the Redbook about the maturity dates, he "felt somewhat reassured" about the safety of his investments by other representations made in the Redbook which was apparently produced and given to Pyle by White. Second Pyle Affidavit, p. 6.

A determination of how quickly a reasonably diligent investor would have discovered fraud in such circumstances as these would depend on the contents of the oral representations made to Pyle both when he made his investments and when he was reassured about them in January, 1988. However, as the parties do not elaborate on (and probably disagree about) the contents of such oral communications, this court is not in a position, particularly in light of the countervailing factors argued, to conclude as a matter of law what actions a reasonably diligent investor would have taken. *See Admiralty Fund v. Jones*, 677 F.2d 1289, 1293–1294 (9th Cir.1982) (finding summary judgment inappropriate on section 13 limitations defense in light of conflicting inferences from facts alleged). Accordingly, the defendants' motion for sum-mary judgment on the 1933 Act claims not conceded by the plaintiff is denied.

## B. Federal Unsuitability Claims

"Plaintiff has claimed that the sale of a security unsuitable for the investor, [sic] is a violation of Rule 10b–5 [17 C.F.R. § 240.-10b–5]. The standard of a broker's conduct in this regard is set forth by both NASD and NYSE rules." Plaintiff's Response, p. 10. The parties disagree about whether a cause of action should be implied in this case under NASD suitability and NYSE know-your-customer rules, and the court will address this specific dispute.

In response to the defendants' citation of cases such as *Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413, 1419 (11th Cir.1983), for the proposition that suitability rules do not provide causes of action, the plaintiff argues as follows:

Defendants *only* argue that violations of the rules are not *per se* actionable under Rule 10b–5. As to this specific argument, Plaintiff disagrees based upon binding law in this Circuit, *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135 (7th Cir.), *cert. denied*, 396 U.S. 838[, 90 S.Ct. 98, 24 L.Ed.2d 88] (1969)....

Plaintiff's Response, p. 10.

Assuming that were a fair characterization of the defendants' argument, the defendants would be correct, as the Seventh Circuit stated in *Buttrey*, 410 F.2d at 142: "We do not decide that an alleged violation of Rule 405 [a know-your-customer rule] is *per se* actionable."

In *Buttrey*, the Seventh Circuit, applying the methodology of *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), found a cause of action under Rule 405 in a case involving a "defendant[ security dealer]'s acceptance of investments without regard for the bankrupt broker's defalcations of investors' funds." *Buttrey*, 410 F.2d at 142. In those circumstances, the court found that "[s]uch a breach of fair practice undermines the protection of investors and surely 'play[s] an integral part in SEC regulation' of Exchanges and their members." *Id.* (quoting *Colonial Re-*

*alty Corp. v. Bache & Co.*, 358 F.2d 178, 182 (2nd Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966)).

The plaintiff has not argued that similar policy arguments compel the application of *Buttrey* to the facts of this case,[2] which involves an agent's alleged wrongdoing with respect to an investor's funds rather than a security dealer's alleged supervisory failures with respect to a broker who in turn defrauded investors.

■ The weight of more recent authority is against implying a cause of action under NASD suitability and NYSE know-your-customer rules. *See, e.g., Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir.1990) ("NYSE [know-your-customer] Rule 405 does not imply a private right of action...."); *Carrott v. Shearson Hayden Stone, Inc.*, 724 F.2d 821, 823 (9th Cir.1984) (per curiam) (no cause of action under NYSE Rule 405); *Thompson*, 709 F.2d at 1419 (no merit to "contention that there is a private cause of action under the federal securities laws for violation of both the New York Stock Exchange 'know your customer' rule and the National Association of Securities Dealers' 'suitability' rule"); *Haburjak v. Prudential–Bache Sec., Inc.*, 759 F.Supp. 293 (W.D.N.C.1991) (no cause of action for alleged violation of NASD regulation); *Dale v. Prudential–Bache Sec., Inc.*, 719 F.Supp. 1164, 1167–1168 (E.D.N.Y.1989) (applying the analysis dictated by *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and concluding that there is no private right of action for violation of NYSE Rule 405); *Castro v. Marine Midland Bank, N.A.*, 695 F.Supp. 1548, 1552 (S.D.N.Y.1988) (rules of stock exchanges and NASD do not provide implied right of action); *Frota v. Prudential–Bache Sec., Inc.*, 639 F.Supp. 1186, 1190 (S.D.N.Y.1986) (no implied cause of action under NYSE and NASD rules); *Baden v. Craig–Hallum, Inc.*, 646 F.Supp. 483, 491 (D.Minn.1986) (no private right of action

for violation of NYSE or NASD rules); *Cummings v. A.G. Edwards & Sons, Inc.*, 637 F.Supp. 132, 134 (M.D.La.1986) ("no private right of action under NYSE Rule 405 and the NASD rules"); *Shahmirzadi v. Smith Barney, Harris Upham & Co.*, 636 F.Supp. 49, 52–53 (D.D.C.1985) (no cause of action for NYSE and NASD rule violations); *Witt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 602 F.Supp. 867, 869 (W.D.Pa.1985) ("no private right of action ..., either express or implied" under NYSE and NASD rules); *but see Cook v. Goldman, Sachs & Co.*, 726 F.Supp. 151, 156 (S.D.Tex.1989) (applying *Buttrey* and finding an implied cause of action under Rule 405 and NASD rules).

In light of the substantial weight of opinion against implying a cause of action under NYSE and/or NASD rules, and since the plaintiff did not argue the similarity of the facts in this case to those in *Buttrey*, which explicitly refused to find violations of the NYSE know-your-customer rule *per se* actionable, this court declines to expand *Buttrey* to cover the facts of this case. Violations of the NASD suitability or the NYSE know-your-customer rules do not in and of themselves provide a cause of action,[3] and the defendants' motion for summary judgment on this issue is granted.

C. Indiana Securities Law Claims

■ The third point on which the defendants seek summary judgment is with respect to the plaintiff's claims under the Indiana securities laws for failure to deliver a prospectus and for lack of suitability. The defendants argue:

> To the extent that plaintiff is claiming the right to recover under the Indiana Securities Act for an alleged failure to deliver prospectuses and for the alleged lack of suitability of the investments, claim [sic] must be dismissed because the Indiana Securities Act does not provide

---

2. The burden is on the plaintiff to establish that a cause of action should be implied. *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 797 (7th Cir.1977); *Buttrey*, 410 F.2d at 142.

3. This is not to say that these rules would not be relevant standards by which the defendants' conduct should be evaluated. *See Miley v. Oppenheimer & Co.*, 637 F.Supp. 318, 333 (5th Cir. 1981); *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 824 (9th Cir.1980).

for a private right of action for such claims.

Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment, p. 11.

The applicable statutory section authorizing private causes of action for violations of Indiana securities laws is Ind.Code § 23-2-1-19(a), which makes actionable offers or sales "of a security in violation of this chapter," meaning Ind.Code § 23-2-1 ("Chapter 1"), which contains securities regulation legislation. What the chapter does not contain is any provision specifically requiring the delivery of prospectuses or imposing a suitability requirement. These events are thus not actionable in and of themselves under Ind.Code § 23-2-1-19(a), and to that extent, the defendants' motion is granted.

That is not to say, however, that the failure to deliver prospectuses and the lack of suitability could not form the basis of or be an element of some other conduct proscribed and made actionable by Chapter 1, and this is what the plaintiff argues in his response brief. Specifically, the plaintiff argues that he has causes of action based on violations of sections 11(a)(6) and 12 of Chapter 1. Section 11 provides in relevant part:

(a) The commissioner may by order deny, suspend, or revoke registration of any broker-dealer, agent, or investment advisor if he finds that the order is in the public interest and that the applicant or registrant or, in the case of a broker-dealer or investment advisor, any partner, officer, or director:

.    .    .    .    .

(6) has engaged in dishonest or unethical practices in the securities business....

Ind.Code § 23-2-1-11(a)(6).

Section 12 makes "[i]t ... unlawful for any person in connection with the offer, sale or purchase of any security, either directly or indirectly" to commit various acts of fraud.

While Ind.Code § 23-2-1-19(a) makes actionable a "violation of any of the provisions" of Chapter 1, this court concludes that section 11(a)(6) (indeed, section 11(a) generally) does not support a cause of action. Section 11(a) does not simply make it illegal to engage in "dishonest or unethical practices in the securities business," Ind. Code § 23-2-1-11(a)(6), for example; instead, section 11(a) provides the commissioner with various remedies should such conduct occur. The plaintiff has not established how section 11(a) itself has been violated. The subject matter of section 11(a) is what "[t]he commissioner may" do, so that a violation of the section would involve, if anything, mal- or nonfeasance on the commissioner's part.

While this is admittedly a rather fine line to draw, the court believes it is in harmony with the enforcement scheme established in Chapter 1. Although nothing in section 11 explicitly makes the remedies of the section *exclusively* available to the commissioner or otherwise qualifies the applicability of section 19(a), the conclusion that section 11(a) describes the commissioner's, rather than a private individual's, enforcement realm, flows naturally from the fact that section 11(a) begins "The commissioner may...." The court is reassured that its conclusion with respect to section 11(a) is correct by the plaintiff's failure to cite any case in which a cause of action under Ind. Code § 23-2-1-19(a) is based on a violation of section 11(a).

The court is of a different opinion with respect to section 12, however. The plaintiff argues that he has stated a claim under Ind.Code § 23-2-1-19(a) for a violation of section 12 consisting of the defendants' failure to deliver prospectuses. However, the court need not decide whether the plaintiff has stated a claim because the ground on which the defendants moved for summary judgment was that there was no cause of action available for a violation of section 12, not that the plaintiff had failed to state a claim under an uncontestedly actionable provision of Chapter 1.

The parties draw analogies to section 10b-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), in support of their points of view as to whether a violation of section 12 is actionable. The court will not

delve into the comparison with section 10b–5, however, as the statutory provision truly determinative of the issue of whether a violation of section 12 is actionable is Ind. Code § 23–2–1–19(a), which, as noted above, provides a cause of action for offers or sales of securities "in violation of any provision" of Chapter 1, thus including section 12. The defendants have not demonstrated why the broad language of Ind. Code § 23–2–1–19(a) does not encompass a cause of action for a violation of section 12.

To sum up, the Indiana securities laws do not provide a private cause of action simply for the failure to deliver prospectuses or for the lack of suitability. However, these allegations could form the basis of a cause of action under Chapter 1. While Ind.Code § 23–2–1–19(a) does not provide a cause of action with respect to section 11(a) of Chapter 1, it does make actionable violations of section 12.

### D. Common Law Fraud Claims

■ The defendants argue that the plaintiff has failed to establish a prima facie case of fraud and that they are therefore entitled to summary judgment on such claims. "The essential elements of actual fraud are a material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes reliance to the detriment of the person relying on the representation." *Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844, 847 (Ind. Ct.App.1990); *see also Ryan v. Chayes Virginia, Inc.*, 553 N.E.2d 1237, 1241 (Ind. Ct.App.1990).

The alleged misrepresentations or omissions made by White in this case concerned the nature, the risk, and the liquidity of the investments that he recommended. The defendants point to evidence, including a statement by Pyle in his first affidavit that he later recanted, demonstrating that Pyle knew that the investments that he made were speculative. Since a plaintiff cannot claim fraud based on statements he knew to be untrue, *Edwards v. Hudson*, 214 Ind. 120, 14 N.E.2d 705, 707 (1938), the defendants argue that Pyle cannot establish reliance and that his claim must therefore fail.

■ In an attempt to demonstrate his reliance, the plaintiff makes what appear to be two arguments. One is that the product information sheets that White gave to Pyle contained misrepresentations. However, Pyle testified in his second affidavit he did not see these information sheets (or essentially any other written material) until after he made his investments, Second Pyle Affidavit, pp. 4–5, so he could not have relied on the misrepresentations the sheets allegedly contained. Even if those sheets did have material misrepresentations, and even if Pyle had them when he made his investments, this would not directly refute the defendants' argument that Pyle cannot make a claim for fraud when he was aware of the speculative nature of the investments before he made them.

The plaintiff's second argument is, however, more responsive. Pyle takes the position that, while he had some awareness of the fact that the investments were speculative, he was deceived or not informed by White about just how risky the investments were. Second Pyle Affidavit, pp. 2–3. Pyle could conceivably have appreciated (and apparently did) that the investments he made were riskier than the insurance annuities he had previously invested in but at the same time been deceived by White's alleged representations and omissions into making much more speculative investments than he had desired.

■ Just how well Pyle appreciated the speculative nature of the investments he made and, hence, how much he relied on White's advice, are questions of fact. Summary judgment is therefore inappropriate, and the defendants' motion with respect to the common law fraud claims is denied.

### E. The Breach of Fiduciary Duty Claims

The final portion of the defendants' summary judgment motion is directed to the plaintiff's breach of fiduciary duty claims with respect to the first six investments made (in Centennial, VMS Mortgage, Di-

vall, Southmark, VMS Strategic, and CNL) of the eight at issue. The defendants maintain that the breach of fiduciary duty claims based on these six investments are barred by the two-year statute of limitations found in Ind.Code § 34–1–2–2, which provides in relevant part: "The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards: (1) For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two (2) years." The first six investments were made on or before June 16, 1987, more than two years before the plaintiff filed his complaint on July 24, 1989.

■ The plaintiff responds that the breach of fiduciary duty claims based on these investments are not barred because the running of the statute of limitations was tolled by the defendants' fraudulent concealment of material facts. Under Indiana law, "[i]f any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action." Ind. Code § 34–1–2–9. Although as a general rule the concealment which tolls the running of the statute of limitations must be active, "[t]he concealment need not be active ... if the defrauder has 'a duty to disclose material information to individuals with whom he has a fiduciary or confidential relationship.'" *Hildebrand v. Hildebrand*, 736 F.Supp. 1512, 1523 (S.D.Ind. 1990) (quoting *Lambert v. Stark*, 484 N.E.2d 630, 632 (Ind.Ct.App.1985)). Nonetheless, "Indiana law requires a plaintiff to have used reasonable diligence to discover the ... cause of action." *Hildebrand*, 736 F.Supp. at 1524.

The defendants respond that even if fraudulent concealment did toll the statute of limitations, that tolling ended in January, 1988, when the plaintiff received the Redbook, and the plaintiff then had a reasonable period within which to file suit. In

light of the information revealed to the plaintiff in January, 1988, the defendants contend that the suit filed in July, 1989, was time-barred.

■ In support of that position, the defendants cite cases such as *Cyrus v. Nero*, 546 N.E.2d 328 (Ind.Ct.App.1989), and *Spoljaric v. Pangan*, 466 N.E.2d 37 (Ind. Ct.App.1984), which construe the equitable doctrine of fraudulent concealment rather than Ind.Code § 34–1–2–9, which by its terms allows an action to "be commenced at any time within the period of limitation after the discovery of the cause of action." Applying the two-year limitations period of Ind.Code § 34–1–2–2(1) with a discovery date in January, 1988, the plaintiff's July, 1989 complaint was timely filed.[4] Alternatively, if a shorter limitations period were to apply after discovery, the parties disagree (as noted above, *see supra* part A) about when the plaintiff discovered facts which would have prompted him, acting with reasonable diligence, to uncover the alleged fraud. Accordingly, the defendants' motion with respect to the breach of fiduciary duty claims is denied, for the two independently sufficient reasons that Ind. Code § 34–1–2–9 extended the period through July, 1989, or that there is a genuine issue of fact as to when Pyle should with reasonable diligence have discovered fraud and thereby commenced the running of a reasonable limitations period.

## II. CONCLUSION

Summary judgment is granted in the defendants' favor on the following issues: Pyle's claim under section 12(1) of the 1933 Act based on the defendants' failure to deliver prospectuses, his claim under section 12(2) of the 1933 Act with respect to his investment in VMS Mortgage Investors, L.P. II, his section 12(2) claims based on misrepresentations with respect to investment maturity dates, and his claims under section 17(a) of the 1933 Act. However, defendants' motion for summary judgment on the 1933 Act claims not conceded by the plaintiff is denied. Since the court has

---

**4.** The defendants have not argued that the plaintiff's alleged failure to discover the alleged fraud until January, 1988, displayed an unreasonable lack of diligence.

concluded that violations of the NASD suitability or the NYSE know-your-customer rules are not actionable in and of themselves, the defendants' motion for summary judgment on this issue is granted. Likewise, the failure to deliver a prospectus or the lack of suitability is not of itself actionable under Ind.Code § 23–2–1–19(a), and on that point, the defendants' motion is granted. However, the defendants' motion with respect to the common law fraud claims and the breach of fiduciary duty claims is denied.

It is so ORDERED.